**JACKSHAW PONTIAC, INC., Wilis Appliance & T.V. Inc., Plaintiffs,**

v.

**The CLEVELAND PRESS PUBLISHING CO., Plain Dealer Publishing Co., Joseph E. Cole, Defendants.**

**Civ. A. C 83–4481.**

United States District Court,
N.D. Ohio, E.D.

May 24, 1984.

---

Thomas Repicky, Isaac, Elder & Repicky, Cleveland, Ohio, for plaintiffs.

Robert A. Goodman, David G. Holcombe, Cleveland, Ohio, William E. Willis, Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On June 17, 1982, the Cleveland Press Publishing Co. ("Press Publishing") and its president, Joseph Cole, closed Cleveland's daily afternoon newspaper, the Cleveland Press ("Press"). Hundreds of employees lost their jobs and Cleveland was left with only one daily newspaper. The Plain Dealer Publishing Company ("Plain Dealer"), publisher of the surviving paper, purchased the Press' subscription list, an advertising insert, certain comics, and rights to editorial columnists. It also hired some Press employees.

On February 23, 1983, eighty-nine former Press employees filed a six-count complaint against the Plain Dealer, Press Publishing, Cole, and two other defendants. The complaint alleged that defendants violated federal labor laws by breaching the Press' collective bargaining agreements and violated antitrust laws by conspiring to close the Press and to provide the Plain Dealer with a monopoly in the Cleveland daily newspaper market. Four of the five defendants moved to dismiss. On September 1, the motions were denied. *Province v. Cleveland Press Publishing Co.*, 571 F.Supp. 855 (N.D.Ohio 1983). The parties are complying with a discovery schedule and the case is tentatively scheduled for trial on November 12, 1984.

After the *Province* opinion was issued, two additional antitrust complaints were filed as related cases pursuant to Local Civil Rule 7.09(4)(c). This is the first of those cases.[1] Jackshaw Pontiac, Inc. ("Jackshaw Pontiac") and Willis Appliance & TV, Inc. ("Willis Appliance") assert that

---

1. The other related case is a proposed antitrust class action brought on behalf of prepaid subscribers to the Plain Dealer. *Griffin v. Advance Publications, Inc.,* No. C84–570 (N.D.Ohio filed Feb. 21, 1984).

Press Publishing and Cole conspired with the Plain Dealer to close down the Press and establish a monopoly. They allege violations of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, and sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26. Subject matter jurisdiction rests on 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 15. Plaintiffs now move this Court to certify this case as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3) on behalf of three classes of advertisers allegedly injured by the conspiracy to close down the Press.

■ In reviewing such a motion, a court must be particularly concerned with the adequacy of representation, because the judgment in a class action determines the rights of large numbers of class members who will never appear in the courtroom. A court must also remember that not all wrongs may be remedied by a class action, and that, however serious, mere allegations of large-scale conspiracy are not sufficient to satisfy the constitutionally-derived requirements of Rule 23. Jackshaw Pontiac and Willis Appliance, like the plaintiffs in the *Province* case, raise disturbing questions about the circumstances surrounding the demise of the Press. But they have failed to satisfy the clearly defined requirements for certification of a class action. For the reasons set forth below, the Motion to Certify Class is denied.

### I.

#### A.

Plaintiffs' two-count Amended Complaint, filed on January 6, 1984, summarizes the alleged antitrust conspiracy in paragraph 7:

In order to acquire, control and dominate advertising in the Cleveland and Northern Ohio geographic market, and in order to foreclose competition from acquisition of and access to such advertisers, The Press and Plain Dealer entered into an unlawful combination, conspiracy, agreement and contract in restraint of the aforesaid interstate trade and commerce by which the Press agreed to discontinue its publication and not to sell its publication or any of its assets to any competition other than the Plain Dealer in return for which the Plain Dealer agreed to pay The Press a sum of money, the exact amount of which is unknown to plaintiff, but which plaintiff believes and therefore alleges to be in excess of Fourteen Million Dollars ($14,000,000.00) purportedly for subscription and advertisers list which defendant Plain Dealer already knew and which in fact were of absolutely no value whatsoever to the defendant Plain Dealer.

The consequences of this conspiracy are said to be that prices of advertising space in the Plain Dealer "were raised, fixed, stabilized and maintained at non-competitive levels" and that advertising customers "have been deprived of free and open competition in the sale of newspaper advertising space." Amended Complaint ¶ 8a–b, at 4. Plaintiffs now must allegedly purchase advertising "at prices higher than prices which plaintiff [sic] would have had to pay under natural conditions of competition in the absence of any such conspiracy...." *Id.* ¶ 11, at 5.

The class affected by the conspiracy alleged in Count I is vaguely defined as follows:

This action is brought on behalf of Plaintiffs as well as each and all persons, firms, partnerships, associations and corporations similarly situated who are advertisers through various media, including the newspaper print media and who are or have been advertisers in the newspaper known as "The Cleveland Press" and "The Plain Dealer" which are owned and operated by the respective defendants as hereinafter described. Advertisers are engaged in one or more lines of commerce and engage directly or indirectly with the public, and fall into three general categories: local, regional and national. Each of these three categories of advertisers buy space in the print media. Such advertisers are located within and without the District and are so nu-

merous as to make it impracticable to join all members as plaintiffs....

*Id.* ¶ 2, at 2.

Count II comprises allegations made solely by Willis Appliance, which claims that from late 1980 until June of 1982 "Willis entered into an agreement with Cole to trade advertising lineage for merchandise at retail prices" pursuant to which "Willis obtained greater advertising lineage than it otherwise would have been able to obtain." *Id.* ¶ 15 at 6. He proposes to represent a class of "other persons, firms, partnerships and corporations [who entered into similar agreements] whereby goods and services were exchanged for advertising lineage." *Id.* ¶ 16. Paragraph 17 states the proposed class' cause of action:

As a result of the illegal contract, combination and conspiracy in restraint of trade, Willis and other members of the class have been deprived of the opportunity of obtaining advertising lineage in exchange for merchandise and services. As a direct and proximate result, Willis has been unable to purchase advertising sufficient to attract customers to its store located at 5800 Mayfield Road, Mayfield Heights, Ohio, so as to operate that store profitably. Since the cessation of the agreement described in paragraph 15 and publication of the Cleveland Press, Willis' store at 5800 Mayfield Road has sustained an operating loss in excess of Four Hundred Thousand Dollars ($400,000.00) and Willis has deter-

mined that it is necessary to close said store, thereby causing Willis further and continuing damages.

Under Count I the plaintiffs seek treble damages, costs and fees, injunctive relief, and a court order that defendants "restore effective competition herein by creating a competing newspaper which is funded sufficiently to overcome losses for a period of not less than five (5) years ..." Under Count II they seek treble damages, costs and fees.

As filed, the Amended Complaint fails to comply with any of the requirements set forth in the Local Rule for Complex Litigation that governs class actions.[2]

B.

On February 15, the plaintiffs filed a Motion to Certify Class. The Motion did not state whether plaintiffs sought certification of the Count I class, the Count II class, or both. In the accompanying brief, the plaintiffs stated that this "action is brought as a class action by plaintiffs on their own behalf and on behalf of all others who are advertisers through various media and who are or have been advertisers in the *Cleveland Press* and *The Plain Dealer.*" No cut-off dates were suggested, nor did plaintiffs suggest certifying more than one class or sub-class to reflect the considerably different allegations contained in Counts I and II.

To confuse matters further, the named plaintiffs offered inconsistent class defini-

---

**2.** L.Comp.R. 3.01 provides:

(1) The complaint in any case sought to be maintained as a class action shall bear next to its caption the legend, "Complaint-Class Action."

(2) Such complaint shall contain under a separate heading styled, "Class Action Allegations", the following:

(a) A reference to the portion or portions of Rule 23, *Federal Rules of Civil Procedure,* under which it is claimed that the suit is properly maintainable as a class action.

(b) Appropriate allegations thought to justify such claim, including, but not necessarily limited to:

(A) the size (or approximate size) and definition of the alleged class;

(B) the basis upon which the plaintiff (or plaintiffs) claims:

(i) to be an adequate representative of the class, or

(ii) if the class is comprised of defendants, that those names as parties are adequate representatives of the class;

(C) the alleged questions of law and fact claimed to be common to the class; and

(D) in actions claimed to be maintainable as class actions under subdivision (b)(3) of Rule 23, *Federal Rules of Civil Procedure,* allegations thought to support the findings required by that subdivision.

(3) The foregoing provisions shall apply, with appropriate adaptions, to any counterclaim or cross claim alleged to be brought for or against a class.

tions at their respective depositions. Donald M. Willis, the chairman of the board and majority shareholder of Willis Appliance, stated that he sought to represent a class comprising "[e]verybody who advertised in The Cleveland Press, even the classified ads, general advertising, retail advertising. Everybody who has ever advertised. All advertisers in The Cleveland Press or The Cleveland Plain Dealer ... everyone who advertised in the paper, classified or display or national advertising. Everybody." Willis Deposition at 38–40. However, Stephen Jackshaw, the president and majority shareholder of Jackshaw Pontiac, stated his intention to represent a more limited class of "all the advertisers in the northern part of Ohio" who advertised in the Press between November of 1980 and June 17, 1982 and in the Plain Dealer since the Press closed. Jackshaw Deposition at 44, 48–51.

After the Motion was filed, this Court issued an order permitting the parties "to conduct discovery limited solely to issues relating to class certification." That discovery proceeded fitfully, forcing this Court to issue a Memorandum and Order ruling on a Motion to Compel. The opinion, dated April 16, observed in passing that plaintiffs "have moved to certify an as-yet-to-be-defined class of advertisers allegedly injured by defendants' actions." Consequently, the plaintiffs filed a Supplemental Motion for Class Action Determination at 3:20 p.m. on April 23—the day before oral argument on the Motion to Certify Class—in which they "suggest[ed] to the Court that the classes to be certified be the following":

(1) With respect to the claims presented in Count One of the Amended Complaint:

All retail display advertisers who purchased display advertising from *The Cleveland Press* regularly (on at least two occasions) between January, 1981 and June, 1982 and who have also purchased similar advertising in *The Plain Dealer* subsequent to June, 1982; and

All automotive dealers who purchased classified advertising from the *Cleveland Press* regularly (on at least two occasions) between January, 1981 and June, 1982 and who have also purchased advertising in *The Plain Dealer* subsequent to June, 1982.

(2) With respect to the claims presented in Count Two of the Amended Complaint:

All advertisers who purchased advertising in the *Cleveland Press* between January 1981 and June 1982 on the basis of trading lineage for merchandise at retail prices.

The class of retail display advertisers shall be referred to as Class I(A), the class of automobile advertisers as Class I(B), and the class of advertisers who traded lineage for retail merchandise as Class II.

## II.

■ Jackshaw Pontiac and Willis Appliance must establish their right to use the class action device by satisfying all four criteria of Rule 23(a) as well as the four criteria of Rule 23(b)(3). *See Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 1150 (1976); *Rettig v. Kent City School District,* 94 F.R.D. 12 (N.D.Ohio 1981). The plaintiffs fail to satisfy their burden.

### A. *Rule 23(a) Prerequisites*

Fed.R.Civ.P. 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

### 1. Numerosity

In the Brief in Support of Plaintiffs' Motion to Certify Class, it was contended that "the class is composed of several hundred of persons, firms, partnerships, associations and corporations." The plaintiffs claimed that a recent study found that on any given weekday approximately 150 to 200 persons purchase advertising in the Plain Dealer. The defendants challenged the accuracy and relevance of that estimate. With respect to Count II in particular, the defendants pointed out that only twelve other entities "traded merchandise for advertising lineage." Cleveland Press Brief at 10 n. 7, (citing Affidavit of Valentine Siskovic, Jr., former controller of the Press).

At the April 24 hearing, plaintiffs' counsel utilized the affidavit of Roy O. Kopp, advertising manager of the Plain Dealer, to estimate that Class I(A) would comprise some 2,000 retail advertisers, Class I(B) a significant number of automobile dealers from among the Plain Dealer's 3,000 classified advertisers, and Class II an unknown figure. As to Count II, he argued that "even assuming that there are 13, I think we have numerosity established." Tr. at 6–8. Counsel for the Plain Dealer conceded that Class I(A) would be sufficiently numerous but expressed no opinion as to Class I(B) or Class II. Tr. at 48. Counsel for Cleveland Press objected to all the proposed classes. Tr. at 61.

■ This Court finds that Classes I(A) and I(B) are sufficiently numerous to satisfy the requirements of Rule 23(a). However, the plaintiffs offer no evidence to contradict the evidence presented in the Siskovic affidavit that Class II comprises only thirteen people. Plaintiffs' counsel complained that they were unable to obtain relevant information about Class II members from the defendants, Tr. at 9, but it should be noted that plaintiffs' counsel opposed conducting any discovery prior to a ruling on the pending Motion. *See* counsel's letter to this Court (Feb. 27, 1984) ("Discovery, therefore, is not necessary prior to the hearing of The Motion to Certify The Class ..."). Accordingly, the plaintiffs have failed to prove that Class II comprises any more than thirteen members and to demonstrate that it is "so numerous that joinder of all members is impracticable." While the case law presents no definitive guidance, classes of less than twenty-five persons have rarely been certified. 7 Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 1762 (1972 & Supp.1983); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.05[1] at 23–151 to 23–154 (1982 & Supp.1983–84) ("While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement.").

This Court is aware that in *Senter v. General Motors Corp.* the Sixth Circuit affirmed the certification of a class of sixteen black employees in an employment discrimination case. But the court noted that the class had not been certified until trial, and found it "reasonable to infer that a substantial number of [blacks employed at the General Motors plant in question] are includable in the class eligible for relief on the basis of Appellant's action and that their joinder would be impracticable." 532 F.2d at 523. No such inference is permissible here. Class II fails to satisfy the requirements of Rule 23(a)(1).

### 2. Commonality and Typicality

The Supreme Court has observed that:

The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-represen-

tation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest. . . .

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982).

The allegations of antitrust conspiracy contained in the Amended Complaint are sufficient to satisfy the requirement of Rule 23(a)(2) that a common question of law apply to the entire class. *Rental Car of New Hampshire, Inc. v. Westinghouse Electric Corp.*, 496 F.Supp. 373, 380 (D.Mass.1980) (and cases cited therein); *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 37–38 (E.D.Va.1981); 7 Wright, Miller & Kane at § 1763; 4 H. Newburg, *Class Actions* § 7514 (1977 & Supp.1983).

■ The typicality requirement is not so easily satisfied. At oral argument, plaintiffs' counsel stated that Willis Appliance was the named plaintiff typical of Class I(A) retail display advertisers and Jackshaw Pontiac was the named plaintiff typical of Class I(B) automobile dealers selling cars through classified advertisements. In their Final Brief in Support of Plaintiff's Motion for Class Action Determination, plaintiffs argue that:

> . . . Each member of the class and plaintiffs allege that one single contract which resulted in an agreement to close the Cleveland Press permanently—violated the anti-trust laws, and that as a result of the performance of the one single contract in violation of the antitrust laws, each member of the class and plaintiffs were and will continue to be injured by uniform, across the board increases in advertising rates made possible because of the lack of competition in daily newspapers of general circulation which each member of the class and plaintiffs had available prior to the offending agreement. The only claims different between plaintiffs and the class members are damages, a difference which unequivocally does not destroy typicality.
>
> \* \* \* \* \* \*

All members of the respective class are similarly situated. Each suffered injury and damage of a similar nature as a result of defendant [sic] illegal action. Typicality does not require that the representative claims be identical to those of every other class member.

. . . They may differ in nature and magnitude. . . . Prior to the termination—permanently—of the Cleveland Press, all members of the class had available and could use either or both daily newspapers of general circulation. After the permanent closing of the Press, all members of the class were forced to use only one newspaper—The Plain Dealer. All members of the class were required to pay the same uniform monopolistic price increases. No member of the class had an alternative daily newspaper of general circulation in which to advertise. And, to the extent that alternatives were available (which the evidence will show there was none) they were the same for each class member. If in fact there are realistic alternatives, they would be the same for every automobile dealer because of the similarities of the business and marketing. The same analysis can be applied to retail display advertisers, each of whom are selling consumer products or services which are similarly marketed in Northeast Ohio or Cuyahoga County. A determination and evaluation of other advertising mediums would be the same for members of each class.

\* \* \* \* \* \*

Since plaintiffs have demonstrated repeated rate increases for advertising by the Plain Dealer, they have shown impact of injury or fact of injury, which is typical to the classes. Accordingly Section 4 of the Clayton Act is satisfied and plaintiffs and class members must be allowed to prove their damages at trial by formula and expert testimony.

*Id.* at 2–5.

Prior to the plaintiffs' last-minute redefinition of their sprawling, ill-defined class, the defendants presented affidavits from

Siskovic and Kopp, describing the "myriad" different advertising rates charged by the Press and Plain Dealer. In post-hearing briefs, both defendants reaffirm that, even within the narrower proposed classes I(A) and I(B) a huge number of different rates exist. The Plain Dealer offers a supplemental affidavit from Kopp, which it summarizes as follows:

> ... [T]here are over a hundred different rates applicable to retail advertising in *The Plain Dealer* at any given time. The rate that a particular retail advertiser pays depends on a range of factors including (i) the frequency with which advertisements are placed; (ii) the amount of space consumed; (iii) whether the advertising is daily or Sunday advertising; (iv) whether the advertising is placed in a full-run edition of *The Plain Dealer* or in one of its several zoned editions; (v) whether the advertising is placed in a special section or feature of the newspaper ...; (vi) whether the advertising is placed in conjunction with non-newspaper advertising as part of a complete market coverage program; (vii) whether the advertising is embodied in a preprinted circular; (viii) whether the advertising involves color; and (ix) whether the advertiser qualifies for a suburban or other special rate. Kopp Supp. Aff. at 2.

Plain Dealer Post-Hearing Brief at 2–3. Similar considerations govern the rates charged to automobile dealers who purchased classified advertising. *Id.* at 5, citing Kopp Supp. Aff. at 3. Both retail display and classified advertising in the Press were governed by rate structures of equal complexity. Press Post-Hearing Brief at 4–5, citing Exhibits D–4 and D–7 to original Brief in Opposition to Motion to Certify Class.

Plaintiffs contend that the rate structures are irrelevant to Rule 23(a)(3) and that the antitrust conspiracy inflicted upon all class members makes the claims of Jackshaw Pontiac and Willis Appliance typical of their respective classes. This argument oversimplifies the nature of the private antitrust cause of action asserted and fails to comprehend why courts facing similar cases have been unable to find named plaintiffs' claims typical of proposed classes.

In *National Auto Brokers Corp. v. General Motors Corp.*, 60 F.R.D. 476 (S.D.N.Y. 1973), *aff'd on other grounds, Ambook Enterprises v. Time Incorporated*, 612 F.2d 604 (2d Cir.1979), the court refused to certify classes in three related antitrust suits involving advertising rates set by Time magazine and the New York Times. "Advertisers of completely different types would be involved, with different volumes of advertising, and different demands for service. Different rate structures would be involved for different groups of advertisers." *Id.* at 494 (discussing one of the proposed classes). While plaintiffs here have at least narrowed the proposed classes to similar types of advertising, the court's central point remains relevant and correct.

Plaintiffs do not contend that Willis Appliance has utilized more than a fraction of the retail display advertising rates charged to members of the proposed Class I(A), nor that Jackshaw Pontiac has utilized more than a fraction of the classified advertising rates charged to members of the proposed Class I(B). The antitrust injury they may have suffered is not typical of other class members. The Motion to Certify therefore fails the test of Rule 23(a)(3), not so much because of the shortcomings of the named plaintiffs as because of the inherent inappropriateness of the class action device to the claims being raised. *See* 7 Wright, Miller & Kane at § 1764 ("Rule 23(a)(3) may have independent significance if it is used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are raised.") Here the position of any named plaintiff must be "markedly different" from the claims of other members of the classes.

### 3. Adequacy of Representation

The Supreme Court discussed the elements of adequate representation in *Sosna*

*v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975):

> ... [W]here it is unlikely that segments of the class appellant represents have interests conflicting with those she has sought to advance, and where the interests of the class have been competently urged at each level of the proceeding, we believe the test of Rule 23(a) is met.

In *Senter v. General Motors Corp.,* 532 F.2d at 524–25, the Sixth Circuit stated:

> ... There are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.

And in *Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026, 1031 (6th Cir. 1977), it added:

> ... [I]n making the determination of adequacy of representation, the District Court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent.

*See also Fradkin v. Ernst,* 98 F.R.D. 478, 484–85 (N.D.Ohio 1983).

Plaintiffs contend that they are represented by experienced legal counsel, possess no conflict or potential conflict of interest, have an interest that is totally common with the class' interest, and will vigorously assert and defend the interests of the class. Both Stephen Jackshaw and Donald Willis stated in affidavits that they are "able and willing to expend such sums as may be necessary to vigorously prosecute this action."

The defendants find neither Jackshaw nor Willis an adequate class representative. First, they allege that Jackshaw would be unable to adequately supervise counsel and protect the interests of the class because he demonstrated at his deposition that he knows virtually nothing about this case. Indeed, Jackshaw did not know what court or judge was hearing this case, knew nothing about the substance of the case, and never saw the Amended Complaint until after it had been filed. Second, they question Jackshaw's motives, pointing to his deposition statements terming this lawsuit a "personal attack" in which the principal relief he seeks is "vengeance". Jackshaw Deposition at 43–44. Finally, they deem Jackshaw inadequate because he was unaware that his counsel were currently representing other plaintiffs in a state court action against Press Publishing and Cole. They suggest that the attorneys' failure to discuss the state court case with Jackshaw brings their qualification into question as well.

The defendants' criticisms of Willis are similar. While Willis correctly stated at his deposition both the Court and judge presiding over this case, and refrained from declaring his thirst for vengeance, he is said to suffer from the same conflict of interest problems with respect to the class counsel that afflict Jackshaw. Furthermore, it is alleged that Willis Appliance's principal claim in this action, Count II, relates not to advertising overcharges but to consequential damages suffered because it could no longer barter retail merchandise for advertising. His interest in preserving this right to barter is said to be antithetical to the interests of the majority of potential class members who paid for their advertising lineage in cash.

### a. Common Interests With Class

■ Courts in this circuit typically consider three factors in determining whether a named class representative possesses common interests with unnamed members of the class: (1) whether the representative is a member of the class; (2) the named party's stake in the outcome; and (3) his familiarity with the conditions he seeks to challenge on behalf of the class. *Bowen v. General Motors Corp.,* 542 F.Supp. 94, 99 (N.D.Ohio 1981), *aff'd,* 685 F.2d 160 (6th Cir.1982). Both Willis and Jackshaw satisfy the first two of these criteria. The third requirement poses a problem for Jackshaw.

As Judge Contie noted in *Bowen*, "[i]f a named representative is only familiar with the particular facts surrounding his individual claim, he would not be an adequate representative of the class." *Id.* At oral argument, counsel conceded that Jackshaw's factual knowledge of this case comprised only a belief "that there has been an overcharge of advertising in The Plain Dealer ..." Tr. at 31. Of course, a class representative need not be familiar with all the legal issues in a case and "need not be the best of all possible representatives but rather one that will pursue a resolution of the controversy with the requisite vigor and in the interest of the class." *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 366 (E.D.Pa.1980). While this Court does not apply a Panglossian test to the named plaintiffs either, it concludes that Jackshaw's dearth of knowledge about a case he is purportedly supervising, combined with his admitted ulterior motives, renders him an unfit class representative.

Upon finding that Willis has displayed reasonable knowledge about this case and no improper motives, this Court believes that, as a purchaser of retail display advertising, he would be an adequate class representative. His interest in the "bartering" of merchandise for advertising does not, in and of itself, render him an unfit named plaintiff, especially since the proposed Class II has already been rejected.

b. Vigorous Prosecution of Class Claims

The second *Senter* criterion is that the named representative must "vigorously prosecute the interests of the class through qualified counsel." 532 F.2d at 525. The defendants have questioned the qualifications of class counsel, pointing out that they represent plaintiffs in another action against defendants Press Publishing and Cole—a state court suit brought by former Press employees. *Chinchar v. The Cleveland Press Publishing Co.*, No. 59681 (Cuyahoga Cty. Common Pleas filed May 27, 1983). Two improprieties are suggested: first, that the former employees and the proposed class are seeking to tap the same pool of Press assets, so that a conflict of interest exists between them; and second, that counsel improperly failed to disclose their involvement in the *Chinchar* case to Jackshaw and Willis.

The first allegation is particularly disturbing, since the Press is now defunct and its assets are finite. It is not inconceivable that the amount sought by *Chinchar* plaintiffs and the proposed classes here will exceed the total assets of Press Publishing and Cole. As the court in *Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246 (N.D.Cal.1978), noted, counsel cannot represent different plaintiffs with conflicting claims against the same defendants without violating the ABA Code of Professional Responsibility, DR 5-105 and EC 5-14 through 5-16. "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Id.* at 258.

With some reluctance, this Court must voice some other concerns about plaintiffs' counsel. Their failure to conform their complaint to the requirements of L.Comp.R. 3.01 has already been noted, as has their repeated and unjustified failure to offer a coherent definition of the class or classes they purported to represent until the day before oral argument on the class certification motion. In addition, their briefs have been replete with misstatements of law and fact. For example, in their Supplemental Motion for Class Action Determination, at 4, plaintiffs urged this Court to adopt the approach to class certification articulated in *Alabama v. Blue Bird Body Co., Inc.*, 71 F.R.D. 606, 610 (M.D. Ala.1976), without mentioning that the District Court decision was reversed in part by the Fifth Circuit on the very issue of class certification. 573 F.2d 309 (5th Cir.1978).

Counsel state in their post-hearing brief that they are adequate class counsel because "[t]hey are experienced trial counsel and this is not a complex case." The latter representation is inconsistent with the apparent consensus of all counsel at oral ar-

gument that Classes I(A) and I(B) potentially comprise thousands of numbers, and with plaintiffs' counsel's acknowledgement that the proposed classes might have to be broken down into additional sub-classes. Tr. at 24, 38–39. Moreover, while counsel may have considerable trial experience, they have not demonstrated significant prior experience in antitrust or class action cases. One counsel stated at oral argument that he had "been involved with my firm in one previous antitrust case, not necessarily to the extent of this case," and has taught business law at a local college. Tr. at 34. His co-counsel stated that he "was involved in a class action ...—the price-fixing case in the courtroom of Judge Lambros." Tr. at 35. However, that case settled before trial and classes were certified for settlement purposes only; furthermore, neither the attorney nor his firm appears in the published list of counsel of record. *Ohio Public Interest Campaign v. Fisher Foods*, 546 F.Supp. 1, 2 (N.D. Ohio 1982).

Plaintiffs' counsel have prosecuted their case diligently, and in a manner consistent with the usual quality of practice before this Court. But Rule 23(a)(4) demands more. As noted earlier, "[t]raditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members." *Eisen v. Carlisle & Jacquelin* (*Eisen II*), 391 F.2d 555, 562 (2d Cir.1968), citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). This became particularly true after the 1966 amendments to Rule 23 expanded the res judicata effects of class action judgments. Plaintiffs' counsel adequately represent the named plaintiffs, but, considering the totality of the circumstances and exercising its discretion, this Court cannot conclude that they can adequately represent the interests of all class members.

In sum, Class II fails to satisfy the requirements of Rule 23(a)(1), both named plaintiffs fail to satisfy the requirements of Rule 23(a)(3), and Jackshaw and plaintiffs'

counsel fail to satisfy the requirements of Rule 23(a)(4).

**B. *Rule 23(b)(3) Prerequisites***

Fed.R.Civ.P. 23(b)(3) provides:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The defendants' principal arguments in opposition to certification under Rule 23(b)(3) involve the predominance of common questions of fact or law and the manageability of the class action plaintiffs have proposed.

**1. Predominance of Common Questions**

Section 4 of the Clayton Act, 15 U.S.C. § 15, creates a private right of action under the antitrust laws and provides in pertinent part:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore ... and shall recover threefold the damages by him sustained....

A recent summary of the elements of the Clayton Act cause of action in this circuit stated:

... In order to recover under the antitrust laws, every plaintiff must prove: (1) violation of an antitrust law, (2) a direct injury from such violation, and (3) the amount of damages sustained as a result of such violation. *See, Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir.1978); *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir.1977) [ (en banc), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978) ]. Thus, recovery under § 4 of the Clayton Act is based not on the conspiracy itself but upon the actual injury suffered by the individual plaintiff. *Shumate v. National Association of Securities Dealers, Inc.*, 509 F.2d 147 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975). Fact of injury must be proved with certainty, *Id.*, at 152, and the plaintiff must prove that his injury directly resulted from the antitrust violation. *Alabama v. Blue Bird Body Co.*, 573 F.2d at 317. The fact that an alleged antitrust violation may be a *per se* offense under the criminal provisions of section 1 of the Sherman Act does not satisfy all the elements necessary for recovery under § 4 of the Clayton Act. *See, e.g., McMackin v. Schwinn Bicycle Co.*, 354 F.Supp. 1154 (N.D.Ill.1973). Thus each plaintiff seeking to recover damages due to an alleged price-fixing conspiracy must show with certainty that he made purchases of a price-fixed product at a price raised by reason of the illegal agreement above the competitive level that otherwise would have prevailed. *See, e.g., In re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir.1974).

*Ohio Public Interest Campaign v. Fisher Foods*, 546 F.Supp. at 7.

The plaintiffs contend that liability and injury can be determined by a finding of conspiracy that would be applicable to all class members—that is, they contend that the question of antitrust conspiracy is a predominating common question of fact or law. The defendants contend that each class member must demonstrate that he or she has suffered antitrust injury and that the finding of injury is based on facts particular to the individual—that is, they contend that a blanket finding of conspiracy would be insufficient to prove any individual class member's injury, and that there is no predominating question of fact or law.

A number of courts in this circuit have drawn guidance from the Fourth Circuit's opinion in *Windham v. American Brands, Inc.* See *Ohio Public Interest Campaign v. Fisher Foods; Mekani v. Miller Brewing Company*, 93 F.R.D. 506, 511 (E.D. Mich.1982); *American Custom Homes v. Detroit Lumberman's Association*, 91 F.R.D. 548, 550–51 (E.D.Mich.1981). In *Windham* the court of appeals affirmed a denial of class certification when

... The claims of the parties would involve thousands upon thousands of sales during four separate annual marketing seasons. Moreover, the claims could not be proved by any set method of mathematical or formula calculation but would require individual proof and trial, necessitating the examination of countless invoices, warehouse records, etc.... In view of the overwhelming nature of the individual claims and their complexity, he found, as we have said, that the issue of violation did not predominate nor was a class action a superior remedy in the case.

565 F.2d at 66–67.

The facts of this case are not so overwhelmingly complicated as those in *Windham*, which involved fifteen defendants in eleven states over a number of years. Still, the question of whether the Plain Dealer inflicted antitrust injury on any individual class member depends on particularized questions.

The issue is essentially the same as in the typicality discussion under Rule 23(a)(3): even within the proposed classes of retail display advertisers and automobile dealers who use classified advertising, the Plain Dealer offers a plethora of different rates to different advertisers who possess different relevant markets. In *Legal Clinic of Green and Logan v. Gannett Co.*, 1984–1 Trade Cas. (CCH) ¶ 65,783 (D.Or.

Sept. 9, 1983), the court discussed the inappropriateness of a Rule 23(b)(3) class action to remedy injuries suffered by advertisers after an alleged antitrust conspiracy provided the Gannett paper with a monopoly in the Salem, Oregon area:

> ... The one common question in this case is whether defendants violated the antitrust laws; that is, did defendants conspire, attempt, or actually monopolize by driving the *Community Press* out of business? Were plaintiff to prove this violation, standing alone, plaintiff would still not be entitled to damages under 15 U.S.C. § 15. Plaintiff would have to prove *injury* to its business or property and *damages* before plaintiff could recover. Plaintiff's theory is that by driving the *Community Press* out of business, defendants were able to maintain advertising prices at an artificially high level. Obviously, however, the extent to which defendants can maintain an artificially high price level depends on the ability of defendants' customers to turn to other economically viable advertising sources. Hence, the level of price inflation caused by the monopolization—a determination which must be made before the issue of injury and hence liability may be determined—may differ as to each putative class member.

*Id.* at 67,233.

At oral argument the plaintiffs admitted that *Green and Logan* was correctly decided but sought to distinguish it because the proposed classes and relevant time periods in this case are more precisely defined. In their post-hearing brief they elaborate on this argument, claiming that "[t]he fact of injury is evidenced by increases in advertising rates and can easily be established through expert testimony and through defendant Plain Dealer's rate books and two or three witnesses, namely defendant's employees." Post-Hearing Brief at 6. They further contend that damages can be easily computed by an expert. *Id.* at 10. This distinction is far from clear. Aside from vague references to sub-classes, plaintiffs offer no reply to Judge Frye's well-taken point that antitrust injury—the level of price inflation caused by antitrust conspiracy—may differ as to each member of the proposed classes. Accordingly, it cannot be said that common questions of fact and law predominate among members of the proposed classes.

## 2. Manageability

The plaintiffs concede that no two class members have suffered the same amount of damages, and that class certification would have to be limited to questions of liability only. The difficulty of adopting this suggestion, however, is that this Court would still have to resolve the individual damages claims. There is no mechanism for doing so which would avoid monstrous manageability problems. Where "the amount of injury could not be proven on a class-wide basis [ ] [s]uch individualized inquiries could pose a great burden on the court and render the case unmanageable as a class action." *Mekani v. Miller Brewing Co.*, 93 F.R.D. at 511. In a recent similar case, the Second Circuit affirmed a district court's denial of class certification where no adequate means had been suggested for calculating the differing damages of individual class members:

> An even more serious problem of manageability relates to damages. Each member of the class would be entitled not to a refund of three times what he or she paid but rather three times the amount by which such payment exceeded the prices that would have prevailed in a free market. Such determination would be complicated by the scores of different products involved, varying local market conditions, fluctuations over time, and the difficulties of proving consumer purchasers after a lapse of five or ten years.... As said in a leading treatise, 2 Areeda & Turner, Antitrust Law: An Analysis of Antitrust Principles and Their Application § 332c at 157 (1978):
>
>> The damage issue turns out to be a major stumbling block for class actions. The evidence establishing damages usually varies from class member to class member.... Even the neces-

**196**

sity of individual trials on damages may be fatal if the class numbers in the thousands or millions. Individual litigations in such cases would be clearly infeasible, but the courts will not permit class actions unless they can devise a practical means for their litigation.

The only way that has been suggested to avoid this dilemma, the "fluid" class recovery, has not found favor in this circuit, *Eisen v. Carlisle & Jacquelin (Eisen III)*, 479 F.2d 1005, 1016–18 (2 Cir. 1973) (Medina, J.); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815–16 (2 Cir. 1977); or elsewhere, *In re Hotel Telephone Charges*, 500 F.2d 86, 89–90 (9 Cir.1974).

*Abrams v. Interco, Inc.*, 719 F.2d 23, 31 (2d Cir.1983) (citations and footnote omitted).

With these problems of preponderance and manageability in mind, this Court finds that plaintiffs have failed to satisfy the requirements of Rule 23(b)(3).

### III.

Enough has been said, in this opinion and elsewhere, about the seriousness of the allegations in this case, *Province* and *Griffin*. And it is surely true that "in our society that is growing in complexity there are bound to be innumerable people in common disasters, calamities, or ventures who would go begging for justice without the class action but who could with all regard to due process be protected by it." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 185, 94 S.Ct. 2140, 2156, 40 L.Ed.2d 732 (1974) (Douglas, J., dissenting in part). In appropriate circumstances, this Court has certified classes that satisfied the stringent requirements of Rule 23. *Holden v. Heckler*, 584 F.Supp. 463 (N.D.Ohio 1984); *Wolfson v. Riley*, 94 F.R.D. 243 (N.D.Ohio 1981). But no remedial device is appropriate in every case, and invocation of the magical words "class action" will not suffice to override the requirements of due process and common sense that are built into the Federal Rules of Civil Procedure.

The Motion to Certify Class is denied.

IT IS SO ORDERED.