Howard REICHERT and Jacob Meyers, on behalf of themselves and also on behalf of all purchasers of Bio-Medicus, Inc., stock who are similarly situated, Plaintiffs,

v.

BIO–MEDICUS, INC., et al., Defendants.

David BRASLAU, Individually, and as representative of others similarly situated, Plaintiff,

v.

BIO–MEDICUS, INC., et al., Defendants.

Nos. 4–73–Civil 457, 4–73–Civil 450.

United States District Court, D. Minnesota, Fourth Division.

July 31, 1974.

Robert J. Tansey, Jr., Stacker, Ravich & Radsom, St. Paul, Minn., and Ronald

L. Haskvitz, Smith, Juster, Feikema, Haskvitz & Casserly, Minneapolis, Minn., for plaintiff.

Laurence R. Commers, MacIntosh, Cairns & Commers, Minneapolis, Minn., for Bio-Medicus, Inc.

Joe E. Walters, Kent E. Richey, O'Connor & Hannan, Minneapolis, Minn., for Harold D. Kletchka, Edson Rafferty.

R. Donald Hawkinson, Minneapolis, Minn., for Douglas A. Olsen.

Robert J. Hennessey, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., for Denis McCauley and Denis McCauley & Co., Inc.

## MEMORANDUM

LARSON, District Judge.

This matter is before the Court on motions by the plaintiffs in each of the two cases herein for determinations that their actions may be maintained as class actions under Rule 23 of the Federal Rules of Civil Procedure.

The two cases are private civil suits charging violations of Federal securities laws by Bio-Medicus, Inc., a Minnesota corporation, its three principal officers and directors, and various others who allegedly participated in the unlawful activities of Bio-Medicus and its officers. The actions were filed, along with two other similar civil suits, in the fall of 1973, following the bringing of an action for injunctive relief and appointment of a receiver by the Securities and Exchange Commission (hereinafter SEC) against Bio-Medicus and its three principal officers and directors. On January 14, 1974, while the SEC suit was pending, the private actions were ordered consolidated for purposes of discovery and pretrial motions.

The SEC lawsuit culminated in the entry of a consent judgment on February 6, 1974. Injunctive relief was granted, enjoining certain conduct by Bio-Medicus and its three chief officers and directors and their agents and employees. A receiver was not appointed.

The private actions consolidated herein involve many of the same transactions at issue in the SEC case. One of the private actions has been dismissed. *Greenberg v. Bio-Medicus, Inc.*, No. 4–73–Civ. 423. Another is dormant and not being prosecuted. *Heligman v. Bio-Medicus, Inc.*, No. 4–73–Civ. 415. Plaintiffs in the remaining two actions are now seeking determinations that their actions may be maintained on behalf of themselves and all persons who purchased Bio-Medicus common stock between October 28, 1971, and December 31, 1972.

Bio-Medicus conducted a public offering of 330,000 shares of its common stock from October 28, 1971, through February 1972. The stock was sold at $5 per share during the public offering. The price rose slightly but remained relatively constant during the spring of 1972. The price then rose greatly during the summer of 1972 before suddenly plummeting in September to a level approximate to the public offering price.

Both of the actions involved herein are brought by purchasers in the after-market. The plaintiff in *Breslau v. Bio-Medicus, Inc.*, No. 4–73–Civ. 450, purchased 2,550 shares beginning in August 1972. He has sold 1,750 of the shares. In his complaint he charges that various omissions and misrepresentations were made by the defendants in the sale of the stock in violation of §§ 11, 12(2), and 17 of the Securities Act of 1933, (1933 Act) and § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 (1934 Act). The defendants in the *Breslau* case are Bio-Medicus, Harold D. Kletchka, a director and president of Bio-Medicus; Douglas A. Olsen, a director, vice president, and treasurer of Bio-Medicus; Edson H. Rafferty, a director, vice president, and secretary of Bio-Medicus; Wayne Konga and Herman Lee, the other two directors of Bio-Medicus; Denis McCauley and Company, Inc., the underwriter for Bio-Medicus; and Robert J. Gallivan, Jr., a registered representative of the McCauley Company.

The plaintiff in *Reichert v. Bio-Medicus, Inc.*, No. 4–73–Civ. 457, initially bought 200 shares in August 1972. Following the stock split later that month and the purchase of an additional 550 shares, he now owns 1,150 shares in Bio-Medicus.

The plaintiff in *Reichert* charges violations of §§ 11, 12(2), and 17 of the 1933 Act, § 10 and Rule 10b–5 of the 1934 Act, § 7(a) of the Investment Company Act of 1940, and provisions of the Minnesota securities laws. The defendants are Bio-Medicus, Kletchka, Olsen, Rafferty, the McCauley Company, Denis McCauley individually as chairman of the board of the McCauley Company, and Gallivan.

The defendants in both cases have made various motions for dismissal or summary judgment as to certain or all of the counts of the two complaints. The Court will defer ruling on these motions at the present time and will now consider only the plaintiffs' motions for determination of maintainability as class actions. Rulings on defendants' motions will be made in the immediate future.

In order to establish class actions, the plaintiffs must first satisfy the requirements of Rule 23(a). They then must meet the standards set forth in Rule 23(b)(3). Analysis of the two complaints yields the conclusion that neither satisfies all four of the prerequisites under 23(a) nor the two requirements under 23(b)(3).

Both of the cases satisfy the first two requirements under 23(a): (1) numerosity of class members and (2) existence of common questions of law or fact.

Plaintiffs contend that there were between 1,100–1,200 purchasers of Bio-Medicus stock during the pertinent time period. Not all of them would have claims since those who resold their stock at a profit, *i. e.,* before the decline in price in the fall of 1972, would not have suffered any damage and hence would be inappropriate class members. But there probably is a sufficiently sizeable group of aggrieved purchasers who did not resell at a profit so as to make joinder impracticable.

In each of the actions, there are certain threshold legal questions concerning defendants' liability under the various provisions of the securities laws. For instance, the *Breslau* complaint alleges four omissions and three misrepresentations as the basis for liability under the 1933 and 1934 Acts. Whether each of the defendants is subject to liability for this conduct presents common questions of law and fact. Similarly, the liability of each of the defendants in the *Reichert* complaint depends upon resolution of certain common questions of law and fact. For instance, liability of Bio-Medicus and its three principal officers under the Investment Company Act would be based upon common legal questions as to whether violation of the Act gives rise to civil liability and common fact questions whether the Act was indeed violated by these defendants.

But the other two requirements for maintainability as a class action under 23(a) are lacking in these two cases: (3) typicality of the claims of the representative parties and (4) adequacy of their representation.

The named plaintiffs in each case purchased only in the after-market, yet they each seek to represent classes composed of persons who purchased Bio-Medicus stock in the public offering and the after-market. Their claims are not typical of purchasers during either of these periods.

■ The typicality standard of (a)(3) generally has been recognized as requiring that there be coextensive interests between the representative parties and members of the class and that there not be any antagonistic interests between the representatives and the absentee members of the class. *See Vernon J. Rockler and Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 340–341 (D.Minn. 1971). In the instant cases, those who purchased in the public offering could assert claims under § 11 for reliance on a misleading registration statement and

under § 12(2) against the corporation, their immediate seller. But the testimony from the depositions taken of the named plaintiffs shows that they did not rely upon the registration statement, prospectus, or any other written statements in making their initial purchases. Each was prompted apparently by oral statements made by different persons under different circumstances. The situation of many of the after-market purchasers presumably would be similar.

Thus, the named representatives would not have personal stakes in issues pertaining to the content of the registration statement and prospectus that are central to liability under §§ 11 and 12(2) for the public offering purchasers. Furthermore, many of the purchasers in the public offering have benefited from the temporary rise in the price of Bio-Medicus stock in the after-market and thus would not be as concerned with various allegedly fraudulent transactions that occurred during this period. The named plaintiffs, thus, are bound to be placed in positions of conflicting loyalties in representing the class.

In the *Reichert* complaint there are allegations of 16 improper or fraudulent transactions or occurrences spread over a long period of time. Each of the purchasers would present different issues of reliance and causation.

██ The mere fact that the reliance issue may differ as to each purchaser should not stand in the way of class action treatment. See generally 3B Moore, *Federal Practice*, Par. 23.45[2] (1974 ed.). Reliance is not necessary as to those elements of the two cases that depend upon fraudulent omissions. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, 761 (1972); *see also Myzel v. Fields,* 386 F.2d 718, 735 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *Robinson v. Penn Central Co.,* 58 F.R.D. 436, 444 (S.D.N.Y.1973). Furthermore, reliance might not even be an issue at all for some of the purchasers whose basis of liability would rest upon

their purchase of Bio-Medicus stock at a price affected by defendants' improper activities. *Dolgow v. Anderson,* 43 F.R.D. 472, 491 (S.D.N.Y.1968); *see also Fischer v. Kletz,* 41 F.R.D. 377, 382 (S.D. N.Y.1966). Thus, as a general rule, securities fraud actions are allowed to proceed as class actions "in spite of foreseeable variations on the issue of reliance." *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra,* 345. *See also Green v. Wolf Corp.,* 406 F.2d 291, 300–301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Herbst v. Able,* 47 F.R.D. 11, 16 (S.D.N. Y.1969).

But unlike cases where identical or similar kinds of representations or omissions give rise to individual questions of reliance, greater difficulties exist "where the representations themselves vary as to different members of the class." 3B Moore, *Federal Practice, supra,* Par. 23.-45[2], p. 23–763. The kinds of representations made to the plaintiffs here, and presumably to many of the other after-market purchasers, would be different from and not typical of the representations contained in the registration statement or prospectus upon which liability would depend for many of the public offering purchasers. Not only would the claims of the named plaintiffs not be typical of those of the purchasers in the public offering, but they also would be different from those of the other after-market purchasers. Each of these proposed class members dealt with different sellers, at different times, and under different circumstances.

Recognizing the atypicality of the claims of the representative parties, the plaintiffs contend that defendants engaged in a common scheme or course of conduct that artificially affected the price of Bio-Medicus stock to the detriment of the plaintiffs. While the common scheme or so-called "domino theory" may be used to obviate the problems of individual proof of reliance, *see Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra,* 345; 3B Moore, *Federal*

*Practice, supra,* Par. 23.45[2], p. 23–764, it does not commend itself here.

The essence of the two cases is that the named plaintiffs were defrauded in their purchases on the after-market. Each of them engaged in discrete transactions that have no commonality with the purchases by others in the after-market or in the public offering. Proof of conspiracy would be necessary to enable plaintiffs to prevail against some of the defendants on certain counts of their complaints. But a conspiracy theory should not be used here to transform what are essentially a series of unrelated individual transactions into a broad-based class action on behalf of all of those who purchased under vastly dissimilar circumstances and who assert liability against different defendants under different statutory provisions. *See Pearson v. Ecological Science Corp.,* CCH Fed.Sec. Law Rep. Par. 94,030 (S.D.Fla. 1973).

■ Recovery by each of the purchasers in the after-market would depend upon the particular circumstances attendant his purchase. Neither of the representative parties can be said to present typical claims whose resolution would materially affect the merits of claims of other purchasers in the after-market. Even more apparent is that their claims would have no bearing upon some of the 1933 Act claims of the public-offering purchasers. Given these circumstances, the named plaintiffs do not have typical claims and probably would be inadequate class representatives.

Furthermore, the requirements of 23(b)(3) are not satisfied in that the common questions do not predominate over individual questions and a class action would not be a superior means of adjudication.

Some of the proposed class members may have relied on written statements such as the Bio-Medicus registration statement or prospectus. Others, as apparently is the case with the named plaintiffs, relied wholly or primarily on oral representations from different persons. Some of the proposed class members may have purchased directly from the defendants or those in league with them. But others, probably the majority of purchasers in the after-market, bought from nondefendants who had purchased the stock earlier and were reselling without any connection to the alleged wrongdoing.

Some of the proposed class members could not assert claims under § 11 of the 1933 Act because of the absence of reliance on a registration statement, and some could not claim under § 12(2) of the 1933 Act for want of privity with the defendants. Their claims essentially would be cognizable only under § 17 of the 1933 Act and § 10 and Rule 10b–5 of the 1934 Act, if at all.

■ In sum, both of these cases involve different representations made by different individuals to different purchasers at different times and under different circumstances. *See Winokur v. Bell Federal Savings and Loan Association,* 58 F.R.D. 178, 180–181 (N.D.Ill. 1972). Because of the variations in the issues of liability for so many of the proposed class members, common factual and legal issues do not predominate and class action status should be denied. *See City and County of Denver v. American Oil Company,* 53 F.R.D. 620 (D.Colo. 1971); *see also Cannon v. Texas Gulf Sulphur Company,* 55 F.R.D. 306, 307 (S.D.N.Y.1971).

This is in accordance with the admonition of the Advisory Committee that:

"although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." 39 F.R.D. 98, 103 (1966). *See also Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra,* 344.

■ Not only do the variations in the transactions with the proposed class members negate the predominance test,

but they also counsel against the superiority of class action treatment. The essence of the two cases, at least with regard to purchasers in the after-market, consists of "a disconnected series of oral statements, which must have varied from person to person . . .." *Morris v. Burchard,* 51 F.R.D. 530, 534 (S.D. N.Y.1971). Securities fraud actions involving these kinds of multifarious oral misrepresentations are inherently ill-suited for class action treatment. *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra,* 344; *Morris v. Burchard, supra,* 534; 6 Loss, *Securities Regulation,* Par. 3947 (2d ed. Supp.1969).

Because these cases would ultimately devolve into a series of individual issues as to most of the purchasers, there would be severe management difficulties. At least several sub-classes would have to be created reflecting which purchasers have claims against which defendants under which of the various statutory provisions in question. For example, those who relied on the registration statement would have claims under § 11 against certain of the defendants, while those who did not would not be able to assert liability under this section. Similarly, those who purchased from any of the defendants may be able to maintain an action based on § 12(2) against their immediate sellers and those in control positions, pursuant to § 15 of the 1933 Act. But those who purchased from non-defendants in the after-market could not maintain §§ 11, 12(2) actions, at least in the absence of a showing that the defendants aided and abetted these sellers. *See In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 378–384 (S.D.N.Y.1973).

Care would have to be taken to separate certain of the defendants from liability under those provisions for which they cannot legally be held accountable. For example, defendant Gallivan's liability in both cases appears to be predicated upon his alleged receipt of an unsecured loan from Bio-Medicus in May 1972 and his subsequent use of the proceeds to purchase and thereby inflate the market price of Bio-Medicus stock. He would not incur any liability under §§ 11 and 12(2) for this conduct.

■ These management difficulties alone may warrant denial of class action status. *See Manual for Complex Litigation,* Par. 1.43, pp. 28–29, n. 36 (1973 ed.) and cases cited therein.

■ Furthermore, the preceding SEC action as well as the filing of the private actions consolidated herein have received widespread publicity in the Minneapolis-St. Paul area. *Compare Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra,* 347. Thus, any purchaser of Bio-Medicus stock who has been harmed probably has been alerted to the existence of these lawsuits and could seek to intervene in either of these actions at relatively little expense. *Pearson v. Ecological Science Corp., supra,* p. 94,146. This is a superior mode of proceeding than involuntarily bringing them before the Court as members of a class.

For these reasons, neither of these suits should be maintained as class actions. Accordingly, plaintiffs' motions must be denied.