Carla KURCZI, et al., Plaintiffs,

v.

ELI LILLY & COMPANY,
et al., Defendants.

No. 1:94 CV 0489.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 27, 1995.

Michael Shafran, Scott R. Miller, Shafran & Himmel, Cleveland, OH, for Carla Kurczi et al., plaintiffs.

Michael Shafran, Victor Anthony Mezacapa, III, Scott R. Miller, Shafran & Himmel, Cleveland, OH, for Nancy Gonzalez et al., plaintiffs.

Robin G. Weaver, Paula Beth Christ, Squire, Sanders & Dempsey, Cleveland, OH, Timothy A. Pratt, Mark C. Hegarty, Shook, Hardy & Bacon, Kansas City, MO, James J. Dillon, Kenneth A. Cohen, Goodwin, Procter & Hoar, Boston, MA, for Eli Lilly & Co., defendant.

Paul D. Koethe, Robert C. Weber, Kim F. Bixenstine, Jones, Day, Reavis & Pogue, Cleveland, OH, for Abbott Laboratories, et al., defendants.

Mary M. Bittence, Patricia Ann Poole, Baker & Hostetler, Cleveland, OH, for Ayerst Laboratories, Inc., et al., defendants.

John W. Jeffers, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Breon Laboratories, Inc., et al., defendants.

Gary D. Hermann, Margaret M. Pauken, Hermann, Cahn & Schneider, Cleveland, OH, for Boehringer, Ingelheim Pharmaceutical, Inc., et al., defendants.

Nicholas J. Milanich, Reminger & Reminger, Cleveland, OH, for American Drug Stores, Inc., defendant.

Frederic X. Shadley, Joseph P. Thomas, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, for Armour Pharmaceutical Co., et al., defendants.

Edward J. Cass, Jeffrey Robert Sadlowski, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Barnes Wholesale Drug Co., Inc., et al., defendants.

Patrick Hughes Gaughan, Steven W. Albert, Mary A. Cavanaugh, Hahn, Loeser & Parks, Cleveland, OH, for Barre–National, Inc., defendant.

John J. Regan, Michael G. Bongiorno, Hale & Dorr, Boston, MA, for Beecham Laboratories, et al., defendants.

John C. Nemeth, Law Offices of John C. Nemeth & Associates, Columbus, OH, for Carnrick Laboratories, Inc., defendant.

Timothy R. Cleary, Thomas L. McDonald, Cleary & Delay, Independence, OH, Gerald R. Kroll, Encino, CA, for Chemetron Investments, Inc., et al., defendants.

Gary D. Hermann, Margaret M. Pauken, Hermann, Cahn & Schneider, Cleveland, OH, Edward S. Weltman, Jonathan I. Price, Schneck, Weltman, Hasmall & Mischel, New York City, for Chromalloy American Corp., et al., defendants.

Robert S. Niemann, Kristine K. Meredith, Lynch, Loofbourrow, Gilardi & Grummer, San Francisco, CA, for Cooper Holdings fka Cooper Laboratories, et al., defendants.

Thomas M. Parker, Lori L. Siwik, Roetzel & Andress, Akron, OH, A. Edward Grashoff, Sheila A. Moeller, Winthrop, Stimson, Putnam & Roberts, New York City, for Dart Industries, Inc., defendant.

David J. Rohrbacher, Marcia A. Wagner, Kenneth Bauman, Rohrbacher, Nicholson & Light, Toledo, OH, for Dorsey Labs, et al., defendants.

Ross F. Schmucki, E.I. du Pont de Nemours & Co., Wilmington, DE, Patricia A. Screen, Porter, Wright, Morris & Arthur, Cleveland, OH, for E.I. du Pont de Nemours and Co., et al., defendants.

Victoria L. Vance, Arter & Hadden, Cleveland, OH, Richard A. Dean, Arter & Hadden, Washington, DC, for E.S. Miller Laboratories, et al., defendants.

Paul A. Rose, Sallie Conley Lux, Brouse & McDowell, Akron, OH, Eric D. Statman, Judith A. Yavitz, Anderson, Kill, Olick & Oshinsky, New York City, for Emmons Industries, Inc., et al., defendants.

Patrick McLaughlin, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Arnold I. Burns, Eric R. Levine, Proskauer, Rosegoetz & Mendelshon, New York City, for Faraday, et al., defendants.

Barbara J. Arison, Thompson, Hine & Flory, Cleveland, OH, for Charles E. Frosst & Co., Inc., defendant.

Thomas M. Green, Green & Green, Dayton, OH, for Kendall Drug Co., defendant.

Joseph R. Tira, Quandt, Giffels, Buck & Rodgers, Cleveland, OH, D. John Travis, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Ketchum & Co., defendant.

R. Gary Winters, McCaslin, Imbus & McCaslin, Cincinnati, OH, Henry R. Simon, Linda Trummer–Napolitano, White Plains, NY, for Key Pharmaceuticals, et al., defendants.

Jeffrey Robert Sadlowski, Virginia L. Heidloff, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Lederle Labs, defendant.

Hugh E. McKay, Porter, Wright, Morris & Arthur, Cleveland, OH, John C. Maloney, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Smithkline Beecham Corp. aka Massengill/Beecham, defendant.

John B. Robertson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Mayrand Pharmaceuticals, Inc., defendant.

Jeffery A. Key, John E. Martindale, Martindale & Brzytwa, Cleveland, OH, Ronald G. Blum, Kavanaugh, Peters, Powell & Osnato, New York City, for McKesson Corp. fka McKesson & Robbins, et al., defendants.

Matthew T. Fitzsimmons, III, Nicola, Gudbranson & Cooper, Cleveland, OH, for Merck & Co., Inc., defendant.

Bruce G. Hearey, Spieth, Bell, McCurdy & Newell, Cleveland, OH, for Merrell Dow Pharmaceuticals, Inc. aka Merrel Dow Pharm, et al., defendants.

Frank C. Woodside, III, Mary Jo Middelhoff, Dinsmore & Shohl, Cincinnati, OH, for Norwich–Eaton Pharmaceuticals, Inc. aka Norwich Pharmaceutical Co., et al., defendants.

William A. Viscomi, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Richlyn Laboratories, Inc. aka Richlyn, defendant.

John W. Jeffers, David Arnold, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Success Chemical Co., Inc., et al., defendants.

Grant S. Cowan, Frederick J. McGavran, Frost & Jacobs, Cincinnati, OH, David M. Covey, Sedgwick, Detert, Moran & Arnold, New York City, for Upjohn Co., et al., defendants.

Thomas M. Parker, Lori L. Siwik, Roetzel & Andress, Akron, OH, for Ulmer, et al., defendants.

Mary M. Bittence, Baker & Hostetler, Cleveland, OH, for Wyeth Laboratories, Inc. fka Ives Laboratories, defendant.

John W. Jeffers, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Sterling Winthrop, Inc. aka Sterling Drug, Inc., et al., defendants.

Barbara J. Arison, Thompson, Hine & Flory, Cleveland, OH, Frank J. Eisenhart, Julia J. Tyler, Dechert, Price & Rhoads, Washington, DC, for Baxter Healthcare Corp. aka Flint Laboratories, et al., defendants.

Gregory H. Collins, Martin J. Murphy, Davis & Young, Cleveland, OH, for Warner Chilcott Laboratories Co., Division of Warner Lambert Co. fka William Warner, defendant.

## ORDER

ANN ALDRICH, District Judge.

On September 22, 1994, the plaintiffs filed a motion (Doc. # 117) that this action be maintained as a class action. For the reasons stated below, this Court hereby denies plaintiffs' motion.

### I.

This action is brought by a number of women who claim they have suffered damage to their reproductive systems due to their exposure *in utero* to diethylstilbestrol (DES) between 1949 and 1962. The plaintiffs assert that each of the numerous defendants is either a manufacturer of DES, a distributor of DES, or a parent or successor corporation to a manufacturer or distributor of DES.

The plaintiffs now seek an order that this action be maintained as a class action. In their motion, the plaintiffs state that

the proposed class consists of all past, present, and future female Ohio residents who were exposed to the drug DES *in vitro*,[1] and who have suffered sterility, par-

1. This Court assumes that the plaintiffs intended to name persons who were exposed *in utero* and not *in vitro*, as stated in their motion. None of the plaintiffs has alleged that she was exposed to DES while in an artificial environment, and thus no plaintiff could be a member of such a class.

tial or complete hysterectomies, breast cancer, birth of premature babies, recurrent infections or cervical cancer and/or atypical cervical cells.

Pls' Motion for Class at 1. This differs somewhat from the class definition offered in the plaintiffs' complaint, which states that

> [a]ll named female plaintiffs bring this action on behalf of themselves and all female Ohio residents who were exposed to the drug DES *in utero,* and who have suffered sterility, partial or complete hysterectomies, breast cancer, birth of premature babies, recurrent infection, or cervical cancer and/or precancerous and/or atypical cervical cells and other DES related medical conditions.

Complaint at 27. A third class definition is found in the plaintiffs' memorandum in support of the motion to certify a class. Pls' Mem. in Supp. at 3.

## II.

### A. Prerequisites

Certification of class actions is governed by Federal Rule of Civil Procedure 23. Rule 23(a) establishes four prerequisites to class certification.

#### 1. Numerosity

■ Rule 23(a)(1) provides that the class must be "so numerous that joinder of all members is impracticable." There is no specific minimum class size necessary to satisfy the requirements of Rule 23(a)(1). The rules require a showing by the party seeking to certify a class that joinder of all potential class members is impracticable. "Impracticable," for purposes of Rule 23(a), does not mean impossible. It simply means that it would be extremely difficult or inconvenient to attempt to join all the class members. *See Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333, 334 (N.D.Ohio 1976). Thus, "[i]mpracticality of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir.1976).

#### 2. Commonality

■ In order to certify a class, the party seeking certification must demonstrate that there are "questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2); *Senter,* 532 F.2d at 520 (burden is on party seeking certification). A court reviewing these criteria must not base its conclusions on the merits of any issue. Rather, it must simply determine if the prerequisites of Rule 23(a) will be met by the claims of the party seeking certification. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

#### 3. Typicality

■ In addition to the commonality requirement noted above, Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED.R.CIV.P. 23(a)(3). The Supreme Court noted in *General Telephone* that

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claim are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*General Telephone v. Falcon,* 457 U.S. 147 at 157 n. 13, 102 S.Ct. 2364 at 2370 n. 13. The question becomes whether the named plaintiffs' claims are typical of those of the class as a whole. This does not require that the claims be identical, but there must be some common question of fact or law. *Senter,* 532 F.2d at 525 n. 31; *Thonen v. McNeil–Akron, Inc.,* 661 F.Supp. 1271, 1274 (N.D.Ohio 1986).

#### 4. Adequacy

Finally, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." FED.

---

In fact, as far as this Court is aware, a class defined this way could have *no* members because *in vitro* procedures were not used in human reproduction until at least a decade after DES was no longer prescribed for use in human pregnancies.

R.Civ.P. 23(a)(4). The Sixth Circuit has adopted a two-pronged test for determining the adequacy of potential class representatives. First, the potential representatives "must have common interests with the unnamed members of the class." *Senter*, 532 F.2d at 525. Second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* A court "should consider the experience and ability of counsel for the plaintiffs [the party seeking certification] and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977).

### B. Maintaining a class action

If the party seeking to certify a class action satisfies the prerequisites of Rule 23(a), the party must then demonstrate that the class may be maintained pursuant to Rule 23(b). *See Senter*, 532 F.2d at 525. Rule 23(b) provides three scenarios in which an action may be maintained. The plaintiffs assert that this action is maintainable under either 23(b)(2) or 23(b)(3).

#### 1. Rule 23(b)(2)

Rule 23(b) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied," and

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

■ Rule 23(b)(2) permits class actions in which the plaintiffs seek damages, but only in those cases where the *primary* relief sought is injunctive or declaratory. *Alexander v. Aero Lodge No. 735*, 565 F.2d 1364, 1372 (6th Cir.1977); *Senter*, 532 F.2d at 525; *Probe v. State Teachers Retirement System*, 780 F.2d 776, 780 (9th Cir.), *cert. denied* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). Thus, plaintiffs who demonstrate that the primary relief they are seeking is injunctive or declaratory will not be barred merely because they seek monetary damages as well.

#### 2. Rule 23(b)(3)

In order to maintain an action under Rule 23(b)(3), a court must determine that

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) provides four specific considerations:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced against by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

### III.

### A. Prerequisites

#### 1. Numerosity

■ The plaintiffs have asserted that the class would include "hundreds, and potentially thousands." Pls' Mem. in Supp. at 6. At a hearing on the matter, plaintiffs revised this number to allege that there would be as many as 430,000 plaintiffs in the class. While the plaintiffs are not required to make a specific showing of numbers at this point in the process, the magnitude of the potential class is sufficient to render joinder impracticable, if not impossible. *See Rettig v. Kent City School Dist.*, 94 F.R.D. 12 (N.D.Ohio 1980) (plaintiffs need not allege the exact number of potential class members); *Payton v. Abbott Labs*, 83 F.R.D. 382 (D.Mass.1979) (class of DES-exposed plaintiffs in Massachusetts was sufficiently large to satisfy Rule 23(a)(1)).

#### 2. Commonality

■ Rule 23(a) demands an inquiry into whether a proposed class presents common

issues of law or fact. Rule 23(a) does not require that the claims of the representatives and those of the class be identical. *Senter,* 532 F.2d at 524. However, they must present some common question in order to satisfy Rule 23(a)(2). While the plaintiffs assert that there are at least sixteen different common issues for the class members, a careful examination of those issues demonstrates that none is "common" for purposes of Rule 23(a)(2).

In order to determine if the plaintiffs present any common questions in this matter, this Court must treat each of the sixteen issues individually. They are listed below as "a" through "p," and are quoted directly from the plaintiffs' motion.

> a. Whether the Defendants, manufacturers of DES, inadequately tested DES and failed to provide sufficient warnings regarding the attendant risks and possible injurious complications to those who would prescribe the drug and to the public.

This issue involves at least two separate, potentially common questions. First, the plaintiffs assert that the defendants inadequately tested DES. Second, the plaintiffs assert that the defendants failed to provide adequate warnings. In each case, however, the facts of the instant case require this Court to conclude that these issues would not constitute a common question at trial.

The plaintiffs in this case have named as defendants a great number of different manufacturers, distributors, and related companies. All evidence suggests that each defendant played a different role, if any, in the development and testing of DES. Absent any joint action by all of the defendants, this Court cannot conclude that the question of testing constitutes a common question. The resolution of the question as to one defendant may have no impact on the resolution as to other defendants. Individual proof would likely be required as to each defendant's conduct in the process of drug testing.

Further detracting from the commonality of this issue is the fact that different plaintiffs and potential class members were exposed to DES at different times and in different forms. There is a considerable likelihood that at least a great percentage of the class would be unable to identify the particular manufacturer of the DES to which they were exposed.

The plaintiffs' claim that the defendants warnings were inadequate would only be common if there were a uniformity in the warnings provided by the defendants. The plaintiffs do not allege that all defendants provided the same or substantially the same warnings at any given point. The plaintiffs do not even allege that any given defendant provided the same warnings throughout the period during which it manufactured or distributed DES.

In the face of these differences, which require individualized proof based not only on the particular plaintiff, but on the particular defendant as well, this Court cannot conclude that the plaintiffs' first issue presents a common question for purposes of Rule 23(a)(2).

> b. Whether the Defendants were negligent in the design, manufacture, marketing, labeling and promoting of DES.

Plaintiffs' second issue again presents questions which would be common only if there had been a single defendant acting in such a way that each plaintiff was affected in the same way. That is not the case here.

In order for a plaintiff to prove negligence on the part of even one of the defendants, she would necessarily need to identify that defendant's particular actions in light of a contrary duty. In this case, not only would plaintiffs have the previously mentioned difficulty in identifying a defendant's action, the plaintiffs would be unable to identify a duty commonly owed by each defendant to each plaintiff.

By way of illustration, each defendant's capacity to claim a state-of-the-art defense rests on facts individual to that defendant and to the particular plaintiff. Assuming that Ohio tort law governed the plaintiffs' claims, Ohio Revised Code §§ 2307.71–.80 would provide the standards by which the defendants' conduct would be evaluated.

ORC § 2307.71(P) defines "unavoidably unsafe," for purposes of a products liability action, according to "the state of the technical, scientific, and medical knowledge at the time a product in question left the control of its manufacturer." Accordingly, a defendant's capacity to challenge a claim that there was a design defect or inadequate warning hinges on the state of the art at the time when the DES left that defendant's control. *See* O.R.C. § 2307.75(F) (design defect) and § 2307.76(A) (inadequate warning). Thus, there is no common question regarding negligence by the defendants as to plaintiffs who were exposed at different times because there would be no common state of the art.

As noted above, this analysis assumed that Ohio tort law would apply to each plaintiff's claim. This is almost certainly not the case, and thus, the commonality of these issues is even further compromised.

Ohio choice of law principles parallel the standard set forth in the Restatement (Second) of Conflict of Laws, following the Ohio Supreme Court's decision in *Morgan v. Biro Mfg. Co., Inc.,* 15 Ohio St.3d 339, 342, 474 N.E.2d 286, 289 (1984).[2] *See also Phelps v. McClellan,* 30 F.3d 658, 661 (6th Cir.1994); *Lawson v. Valve–Trol Co.,* 81 Ohio App.3d 1, 4, 610 N.E.2d 425, 426 (9 Dist.1991) (Ohio courts must "give effect to the substantive law of the state with the most significant contacts to the case"). Frequently, these factors can lead to the conclusion that the applicable law in a product liability action is the law of the state where the injury takes place.

Given the fact that a number of the named plaintiffs, and certainly a great number of the absent class members, were not born in Ohio, there is a substantial likelihood that at least some of the potential class members' claims would not be governed by Ohio tort law. To the extent that Ohio tort law differs from any other state's tort law on issues such as the negligence standards or the state of the art defense in a products liability case,

questions of liability cannot be deemed common to all the members of the class.

■ This Court is aware that fragmentation by choice of law does not necessarily defeat commonality for purposes of Rule 23(a)(2). In the school asbestos litigation before the Third Circuit, plaintiffs seeking class certification were faced with an identical issue. Plaintiffs in that case convinced the court that despite the number of different state laws in question, the governing law could be divided into four categories or approaches. The court saw this as manageable and certified the class. *See In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.), *cert. denied,* 479 U.S. 852, 915, 107 S.Ct. 182, 318, 93 L.Ed.2d 117, 291 (1986). However, the plaintiffs in this action have made no assertions that the law can be summarized or classified. In fact, to date, the plaintiffs and their counsel appear to have ignored the choice of law question entirely. It is not the role of this Court to engage in creative advocacy on behalf of the parties.

   c. Whether the Defendants were negligent in failing to heed warnings from respected authorities regarding the dangerous propensities of DES.

To the extent that this issue is not completely covered by the broader issue as framed in the plaintiffs' second proposed common question, it nonetheless fails to present a question common to all class members. As noted above, different defendants were engaged in DES-related activity at different times. Certain defendants were involved only during the early years of DES production, while others were not involved until much later. There can be no common question regarding their treatment of "warnings from respected authorities" unless they received or had access to the same warnings. Even if all the defendants had received similar warnings at the same time, the legal relevance of their "heeding" those warnings would be demonstrated in the warnings they

---

**2.** Specifically, the Supreme Court of Ohio instructs courts to balance "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of

business of the parties; (4) the place where the relationship between the parties, if any, is located;" and (5) other factors. *Id.* 15 Ohio St.3d at 342, 474 N.E.2d at 289.

issued themselves or in any state of the art defense they might raise. For the reasons noted above, neither of these issues presents a common question for purposes of Rule 23(a)(2).

d. Whether the Defendants advertised, promoted, and/or marketed a defective product.

In this proposed common issue, the plaintiffs fail to specify whether the "defective product" is a result of the manufacture, construction, design, formulation or instruction. Each may serve as a basis for finding a product defective under Ohio law. *See* O.R.C. §§ 2307.74–2307.76.

Regardless of the theory under which plaintiffs operate, however, the defendants will be entitled to assert a state of the art defense. The applicability of that defense will vary, as noted above, to such an extent that even a determination of defectiveness may not resolve issues for some plaintiffs or defendants. Accordingly, the plaintiffs' fourth issue does not present a common question.

e. Whether the Defendants are strictly liable for selling a defective product.

The determination of strict liability, as asserted in the plaintiffs' fifth putative "common" issue, hinges on a finding that the product was defective. For the reasons noted in the paragraph above, the plaintiffs fail to demonstrate that there is any common question as to the defective nature of the products involved. Accordingly, the plaintiffs' fifth issue presents no common question for purposes of Rule 23(a)(2).

f. Whether the members of the class have sustained injuries and damages, and if so, what the proper mechanism is for assessing and awarding damages and administering other relief.

The sixth "common" issue presents a two-part question which the plaintiffs assert is common for purposes of Rule 23. In the first part, the plaintiffs assert that there is a common question as to whether each individual plaintiff sustained an injury. The second part refers to issues regarding the assessment and administration of any eventual relief to which the plaintiffs may be entitled. Neither part states a common question for purposes of Rule 23.

██ Identity of injury is not required to certify a class action. *See Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188 (6th Cir.1988) (certifying class of plaintiffs residing near hazardous waste facility, despite differences in the plaintiffs' injuries); *Senter,* 532 F.2d at 523–4 (Title VII class certified despite different damages); *Thonen,* 661 F.Supp. at 1274 (certifying class of retirees seeking varying health benefits); 7B Wright, Miller & Kane, Fed. Practice & Proc. § 1783. However, the mere assertion that all class members have sustained some form of injury, absent an allegation that the injuries share any particular causal link cannot justify class certification. It is obvious that each plaintiff will have to show that she has sustained an injury, just as it is obvious that any plaintiff in any tort action must show that she or he has sustained an injury. However, it is clear that Rule 23 does not contemplate a mere showing of some injury as an independent common question. To read Rule 23 otherwise would support the conclusion that a class of "all tort victims" could satisfy the commonality requirement.

Each DES daughter will be forced to show injury, regardless of whether this Court certifies a class. To the extent that the class definition encompasses only those women who have suffered injury, then once a plaintiff is a member of the class, there is no remaining common question regarding injury.[3]

The second half of the plaintiffs' sixth issue contemplates a common question regarding the assessment and administration of remedies. Determinations regarding the appropriate measure of damages and the manner

---

**3.** The plaintiffs' sixth issue also refers to a common question regarding damages. However, even assuming that every plaintiff suffered some form of injury, because the plaintiffs have not alleged that they suffered identical injuries, there will necessarily be a lack of commonality as to damages.

in which those damages will be assessed and administered are questions which will necessarily turn on the individual facts of an individual plaintiff's case. As with the required showing of injury, *every* tort case will necessarily pose a question regarding the proper assessment and administration of damages. There is nothing common about this determination as to these plaintiffs which is not common to all plaintiffs in tort actions.

It is possible to read the plaintiffs' sixth issue as arguing that because there are numerous plaintiffs in this action, there will be common questions and issues relating to the administration and assessment of damages. However, this argument assumes its conclusion. Even if this Court were to accept the assertion that the measure or administration of remedies constitutes a question which can be universally resolved as to every class member, it only becomes relevant once a class has been certified and liability has been established. There is no common issue here except for the plaintiffs' truism that this Court would need to fashion an appropriate remedial scheme if the class were certified and liability were established.

The entirety of the plaintiffs' sixth proposed issue is no more than a statement of that which would be true in *any* putative class action, no matter how defined, no matter what the causes of action. In any class action, there must be a finding of injury and, if liability is established, a mechanism for assessing and awarding damages. The sixth issue, as broadly stated as it is in the plaintiffs' motion, presents no common question for purposes of Rule 23.

g. The issue of whether or not tolling applies to non resident corporations who sold DES in the State of Ohio between 1947 and 1971.

The plaintiffs' seventh proposed common question treats a purely legal question which does not turn on any fact in this case. In effect, the plaintiffs assert that this Court should consider a restatement of state law as sufficient to satisfy the requirements of Rule 23(a)(2). This Court disagrees. Whether this particular legal question has been resolved, *stare decisis* will govern this Court's

(or any court's) treatment of the issue. This asserted common issue is not anything like the military contractor defense in the Agent Orange litigation. While the resolution of questions relating to the military contractor defense turned on common facts and raised identical legal issues, the question framed by the plaintiffs does not constitute a major issue in this action. In fact, the trial court judge in the Agent Orange specifically distinguished that case from cases involving DES daughters. *See In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 166 (2nd Cir.1987). It is entirely possible that the issue will not be relevant to certain plaintiffs or certain defendants because of their factual circumstances. Accordingly, this Court rejects the plaintiffs' assertion that this issue is "common" for purposes of Rule 23(a)(2).

h. The issue of whether or not the issue of tolling of the statute of limitation applies to corporations which sold DES and made fraudulent representations to the FDA between 1937 and 1941 in connection with the safety of DES.

For the reasons noted in subsection g. above, plaintiffs' eighth asserted common issue presents only an opportunity for a restatement of Ohio law. Furthermore, the issue assumes a conclusion regarding a concert of action among the defendants for which, as noted above, this Court has no basis. The issue also applies only to certain of the named defendants in this action. Therefore, the issue does not satisfy Rule 23(a)(2)'s commonality requirement.

i. Whether the theory of alternate liability adopted by Ohio in the *Minnich* case and reannounced in the *Houston* case applies where the plaintiff cannot identify the product manufacturer of the pill or injection taken.

For the reasons noted in subsection g. above, plaintiffs' ninth asserted common issue presents only a question of restating Ohio law. As such, it does not satisfy the commonality requirements of Rule 23(a)(2). Furthermore, the question may not even be common to all plaintiffs. Some of the class

members may be able to identify the particular manufacturer of the DES to which they were exposed. In such an event, the resolution of this question would have absolutely no bearing on the outcome of the litigation. Thus, the issue is not common.

    j.   Whether the theory of market share liability adopted in New York and California applies where the plaintiff cannot identify the product manufacturer of the pill or injection taken.

Again, for the reasons stated in subsection g. above, the plaintiffs' purely legal question, as asserted in their tenth potentially common issue, does not satisfy the requirements of Rule 23(a)(2). Furthermore, for the reasons noted in subsection j. above, the question will not be common to all class members because not all plaintiffs (nor necessarily all defendants) will be impacted by the resolution of the question.

    k.   Whether the plaintiff was caused in situ carcinoma in the cervix as a result of DES.

The plaintiffs' eleventh common issue, as stated, raises a specific causation problem which can only be resolved through an examination of the particular facts surrounding each plaintiff. Not every plaintiff is alleging that DES caused her in situ carcinoma in the cervix. Even for those plaintiffs who are alleging the same injury, resolution as to one plaintiff's claims will do nothing to prove another plaintiff's claim. Thus, the question is clearly not common.

Even if the plaintiffs had framed their issue to consider the question of whether DES *could* cause this particular injury, the issue of general causation in this case does not present a common question. As with many product liability cases, an investigation into questions of general causation may yield only one of three possible results: (1) the product always causes a particular injury, (2) the product never causes a particular injury, or (3) the product may or may not cause a particular injury depending on a number of factors beyond exposure to or use of the product. *See, e.g., In re Agent Orange Prod. Liability Litigation,* 818 F.2d at 164–65; *In*

*re Fibreboard Corp.,* 893 F.2d 706, 711–12 (5th Cir.1990); *Ikonen v. Hartz Mountain Co.,* 122 F.R.D. 258, 265 (S.D.Cal.1988).

In the instant case, the parties agree that the general causation question falls within the last of these categories. That is, exposure to DES in utero may or may not cause one of a number of injuries. So long as no showing contradicts this °general conclusion regarding the potential that DES is capable of causing certain injuries, the resolution of the general causation question accomplishes nothing for any individual plaintiff. Therefore, the question is not common under Rule 23(a)(2).

    l.   Whether plaintiff was caused to become infertile or sterile as a result of DES exposure.

    m.   Whether Plaintiffs have been caused multiple miscarriages as a result of DES exposure.

    n.   Whether Plaintiffs have been caused malformations of their reproductive tracts including tilted uteruses, hooded uteruses, and incompetent cervix.

For the reasons noted above in subsection k., the plaintiffs' twelfth, thirteenth, and fourteenth stated issues fail to satisfy the requirements of Rule 23(a)(2).

    o.   Whether the ban of DES constitutes evidence of negligence for the manufacturers of DES.

    p.   Whether previous jury verdicts against DES defendants collaterally estop Defendants from relitigating the issues.

The fifteenth and sixteenth issues presented by the plaintiffs, as stated, would at most result in a restatement of the law. For the reasons stated above in subsection g., they do not constitute common questions for purposes of Rule 23(a)(2).

Even if any of the above issues were common as to the plaintiffs and defendants in terms of material facts, the state law which would govern the plaintiffs' claims fragments this class in a way which renders the questions uncommon.

*3. Typicality*

    ■■■ This Court finds that the named plaintiffs in this action fail to satisfy the

requirements of Rule 23(a)(3). Even complete adjudication of their cases could have minimal, if any, effect on the adjudication of other plaintiffs' claims. That is, even if Kurczi were to prevail in her claim, that decision would not provide any other plaintiff with a basis for recovery. Each plaintiff would still have to prove injury, causation, and liability.

Several courts have chosen to frame the test for typicality in terms of the dispositive impact of a verdict for the representative. For example, in *Polich v. Burlington Northern, Inc.*, 116 F.R.D. 258 (D.Mont.1987), the court declined to certify a class, noting that,

> [w]hile the [plaintiffs] all would proceed under the same theories ... the success or failure of such class member's claim would depend on individual factors peculiar to his or her own situation. The class members would not necessarily benefit from any success enjoyed by [the named] plaintiffs.

*Polich,* 116 F.R.D. at 262. Other courts have not required a showing that a victory for the named representative necessarily means a victory for all class members. Instead, they have required only that in order to "meet the typicality requirement, the named representatives must be able to establish the bulk of elements of each class member's claims when they prove their own claims." *Brooks v. Southern Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990) (rejecting class certification where each plaintiff would have to establish the specific terms of a contract and related oral representations and where the defendants had differing potential defenses related to each prospective class member).

In a somewhat more lenient framing of the test for typicality, the court in *Reichert v. Bio–Medicus, Inc.*, 70 F.R.D. 71 (D.Minn. 1974), noted that in a securities fraud action, class certification may be appropriate despite variations in the plaintiffs' reliance on "identical or similar kinds of representations." *Reichert,* 70 F.R.D. at 75. However, where even the "representations themselves vary as to different members of the class," the court was unwilling to find typicality in the named representatives. *Id., citing* 3B Moore, Federal Practice, ¶ 23.45[2], p. 23–763.

Even if this Court were to adopt the most expansive definition of typicality, the plaintiffs fail to satisfy Rule 23(a)(3). This case resembles the *Reichert* case in that the plaintiffs in this action cannot point to any single representation or warning made about DES. Instead, this is a situation in which there were many different representations made to different people by different people. Resolution as to the representations provided to Kurczi would not resolve anything with respect to the representations made to any other plaintiff. Furthermore, as noted above, proof of causation by one plaintiff may have no impact on other plaintiffs' burdens of proving causation. This Court must conclude, as the *Brooks* court concluded, that

> [p]laintiffs here have presented no proof or persuasive legal argument showing that their claims would be overlapping with the prospective class claims, rather than degenerating into a series of mini-trials; a class suit here would not advance Rule 23's goal of judicial economy.

*Brooks,* 133 F.R.D. at 58. These plaintiffs are not typical of the prospective class.

### 4. Adequacy

■ As noted above in section II., the Sixth Circuit has adopted a two-prong test for determining the adequacy of proposed class representatives. The first prong tests the commonality of the interests of the representatives and the class members. The second tests the competence of the proposed class counsel. *Senter,* 532 F.2d at 525; *Cross,* 553 F.2d at 1031. The plaintiffs in this action fail both prongs of the *Senter* test for adequacy.

#### a. Potential conflicts of interest between class and representatives

Because a significant percentage, if not all, of the named plaintiffs in this action are also bringing an identical, individual cause of action in state court, there is a significant risk that these plaintiffs will not adequately represent those absent class members who have not individually joined the parallel state court action. Not only does it pose a risk with respect to settlement and dismissal decisions, it also may remove incentives for the named

plaintiffs to conduct diligent research on individual defendants' identities. That is, a plaintiff who can identify the particular manufacturer of the DES which caused her injuries is in a much stronger position for her litigation than those who cannot identify the individual defendant. While the named plaintiffs may be able to identify or restrict the number of manufacturers in their own cases, that identification will have no bearing on the absentee members. In fact, a negative disposition of this action could bind even those absent class members who could have identified a defendant.

### b. Competence of class counsel

Rule 23(a)(4) demands a standard of practice which exceeds the "usual quality of practice" before a federal court. *Jackshaw Pontiac v. Cleveland Press Pub. Co.*, 102 F.R.D. 183 (N.D.Ohio 1984). Counsel for the plaintiffs have failed, thus far, to measure up to this heightened standard. In fact, counsel has not even satisfied the most basic requirements of Rule 11. In light of Shafran & Himmel's repeatedly disappointing pleadings, arguments, and effort in this action, this Court finds that they fail to satisfy the requirements of Rule 23(a)(4).

Not only has the proposed class failed to research legal issues adequately and to construct thoughtful pleadings, they have proved to be incapable of handling the workload involved in processing the extensive discovery material which necessarily arises in an action such as this.

Furthermore, counsel have placed themselves in a position of potential conflict of interest. Because Shafran & Himmel represents the individual plaintiffs in the parallel state action, *Ambrose v. Eli Lilly and Company, et al.*, Court of Common Pleas, Cuyahoga County, No. 94–274501–CV, potential class members are at risk that counsel will trade off the interests of certain of its clients to the detriment of other clients. In *Jackshaw Pontiac*, counsel for the potential class representatives also served as counsel in a state court action against the same defendants, creating an intolerable conflict of interest.

As the court in *Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246 (N.D.Cal.1978), noted, counsel cannot represent different plaintiffs with conflicting claims against the same defendants without violating the ABA Code of Professional Responsibility, DR 5–105 and EC 5–14 through 5–16. The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.

*Jackshaw*, 102 F.R.D. at 192 (citation and quotations omitted). *See also Kuper v. Quantum Chemical Corp.*, 145 F.R.D. 80 (S.D.Ohio 1992).

Unlike the current case, the plaintiffs seeking certification in *Jackshaw Pontiac* were not parties to the parallel case. This was important in *Jackshaw Pontiac* because their absence from the state case meant that their counsel was representing other parties raising conflicting claims against the same defendants. This distinction, however, does not cure the difficulty raised by Shafran & Himmel's representation of both sets of plaintiffs in this case. Every decision to hasten or delay the litigation on behalf of one set of plaintiffs could alternately harm or benefit the other set of plaintiffs. Furthermore, to the extent that the currently-named plaintiffs in *Kurczi* re also plaintiffs in *Ambrose*, the absent class members are at great risk of being sold out. Even if this class were certified, the named plaintiffs would be neutral as to whether they won a verdict in *Kurczi* or in *Ambrose*.

Absent class members are entitled to better representation than that afforded by Shafran & Himmel. Therefore, this Court finds that class counsel in this matter is not adequate to represent the absent class members. Accordingly, the plaintiffs fail to satisfy Rule 23(a)(4).

### B. Maintaining the class

As noted above, even if the plaintiffs satisfy the requirements of Rule 23(a), they must demonstrate that the class may be maintained under Rule 23(b). *Senter*, 532 F.2d at 525. The plaintiffs in this case seek certification under Rule 23(b)(2) and 23(b)(3). This Court finds that they satisfy the require-

ments of neither subsection, and thus, this action is not maintainable as a class action.

### 1. Rule 23(b)(2)

██ As noted above, a court may maintain an action under 23(b)(2) even if its demands include monetary relief, so long as the primary relief sought is injunctive or declaratory. *Alexander*, 565 F.2d at 1372; *Probe*, 780 F.2d at 780. In the instant case, however, the plaintiffs' complaint contains no demand for injunctive or declaratory relief at all. At a hearing before this Court, counsel for the plaintiffs clearly stated that the plaintiffs seek nothing but monetary damages. Accordingly, the provisions of Rule 23(b)(2) are wholly and manifestly inapplicable, and they cannot support the maintenance of this proposed class.

### 2. Rule 23(b)(3)

██ An inquiry regarding the applicability of Rule 23(b)(3) includes two parts. First, a court must determine if there are common questions which predominate over questions affecting only individual members. Second, a court must determine whether a class action is a superior method of adjudicating the numerous claims.

As noted above, none of the issues identified as "common" by the plaintiffs in their memorandum in support of this motion actually satisfies the commonality requirements of Rule 23(a)(2). Therefore, it is clear that common issues do not predominate, and the class cannot be maintained under Rule 23(b)(3).[4]

Further mitigating against class certification are the four factors set forth in Rule 23(b)(3) regarding the superiority of a class action format. At least three of the four factors leads this Court to the conclusion that this action is inappropriate for maintenance as a class action and that other methods of litigation are superior.

First, Rule 23(b)(3)(A) instructs courts to consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." FED. R.CIV.P. 23(b)(3)(A). In the instant case, a significant percentage of the class would be very likely to have an interest in individually controlling her own litigation. At a minimum, any member of the potential class who can identify the particular manufacturer (or even narrow the field of potentially liable defendants) would be in a far superior position in her litigation than those who are in the position of (at least some of) the named plaintiffs in this action. The scope of discovery and ultimate strategy of such a plaintiff's litigation would be very different than those likely to be adopted by these plaintiffs. Accordingly, this Court must conclude that members of the class may have an interest in individually controlling their own litigation.

Under Rule 23(b)(3)(B), a court must consider whether there is "any litigation concerning the controversy already commenced against by or against members of the class." FED.R.CIV.P. 23(b)(3)(A). In the instant case, at least four of the five named plaintiffs in this action are also plaintiffs in a parallel state court action. The state court action alleges the same causes of action and same injuries against the same defendants. Accordingly, this Court finds that this consideration weighs against the superiority of a class action.

The third question a court must consider under Rule 23(b)(3) involves the desirability of proceeding in this particular forum. While this Court assumes that the plaintiffs chose this forum because the plaintiffs (and potential class members) are Ohio residents, they have made no demonstrations or assertions regarding the superiority of this forum. If the class were defined in such a way that Ohio substantive law governed the plaintiffs' claims, this forum would certainly be appropriate. As the class is currently defined, however, there is no particular basis for determining the appropriate forum for the litigation.

---

4. This Court's denial of the plaintiffs' motion for class certification should not be read as a blanket rejection of the notion that this, or some other group of DES-exposed plaintiffs, may satisfy the requirements of Rule 23. If, for example, a class could overcome the apparent difficulties stemming from the lack of a signature DES injury, a well-defined class action may be entirely appropriate.

The final factor set forth in Rule 23(b)(3) regarding the superiority of class actions is the manageability of the action, if certified as a class. The Supreme Court has described the manageability calculation in Rule 23(b)(3)(D) as "encompass[ing] the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974). Thus, in addition to the typical inquiries regarding the administration of a case, courts have considered and balanced the effects of certifying against those of not certifying a class. *See, e.g., In re Revco Litigation,* 142 F.R.D. 659, 670 (N.D.Ohio 1992) (certifying a class where "the presence of numerous counsel for the various plaintiffs will complicate the management of this case and waste judicial resources"); *Jackshaw,* 102 F.R.D. at 195 (denying certification where actions required individual damage calculations, posing "monstrous manageability problems").

In at least one respect, this action is particularly manageable, as compared to other potential class actions. With the adoption of a system of electronic and on-line filing and service, the parties and this Court have already overcome some of the typical barriers to manageability present in many sizeable class actions.

However, the weight of the considerations in this action force this Court to conclude that a class action would be administratively difficult, if not impossible. This action would very likely require an individual hearing for each plaintiff regarding choice of law, another individual hearing regarding causation, and still another regarding damages. This scenario is hardly the picture of judicial economy envisioned by Rule 23.

## IV.

In sum, this Court hereby denies the plaintiffs' motion to certify this action as a class action.

IT IS SO ORDERED.