Michael D. HAM et al., Plaintiffs,

v.

SWIFT TRANSPORTATION CO., INC., Nevada Corporation, Defendant.

Gerald L. Lott et al., Plaintiffs,

v.

Swift Transportation Co. et al., Defendants.

Michael Pascarella et al., Plaintiffs,

v.

Swift Transportation Co., Inc., Defendant.

Marylene Broadnax et al., Plaintiffs,

v.

Swift Transportation Corporation, Defendant.

Nos. 2:09–cv–02145, 2:09–cv–02287, 2:09–cv–02549, 2:09–cv–02639.

United States District Court, W.D. Tennessee, Western Division.

July 1, 2011.

Frank L. Watson, III, William F. Burns, Watson Burns, LLC, R. Christopher Gilreath, Gilreath & Associates, Memphis, TN, John Shniper, Law Office of John Shniper, Phoenixville, PA, Joseph A. Osefchen, Philip Stephen Fuoco, Law Firm of Philip Fuoco, Haddonfield, NJ, Edward Adam Webb, Matthew C. Klase, The Webb Law Group, LLC, Atlanta, GA, for Plaintiffs.

Lori Hackleman Patterson, R. Mark Glover, Thomas L. Parker, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, Michael K. Kennedy, Paul K. Charlton, Paul L. Stoller, Gallagher & Kennedy P.A., Phoenix, AZ, for Defendant.

**ORDER GRANTING THE *HAM* AND *BROADNAX* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND GRANTING IN PART AND DENYING IN PART THE *LOTT* AND *PASCARELLA* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND STRIKING AS MOOT PLAINTIFFS' RULE 23(g)(3) MOTION FOR APPOINTMENT OF WATSON BURNS, PLLC, AS INTERIM CLASS COUNSEL**

BERNICE BOUIE DONALD, District Judge.

Before the Court is the Motion for Class Certification under Rule 23 of the Federal Rules of Civil Procedure filed January 26, 2011, by Michael D. Ham, Jemonia L. Harris, Dennis R. Wolf, and Frances Wolf—plaintiffs in the action styled as *Michael D. Ham et al. v. Swift Transportation Company, Inc.*, W.D.

Tenn. Case No. 2:09–cv–02145 ("*Ham* Plaintiffs")—as well as by Marylene Broadnax, Reginald Lane, Elisha Jones, and Kevin Shakur—plaintiffs in the action styled as *Marylene Broadnax et al. v. Swift Transportation Corporation*, W.D. Tenn. Case No. 2:09–cv–02639 ("*Broadnax* Plaintiffs"). (D.E.# 116.) Also before the Court is the related Motion for Class Certification under Rule 23 filed December 10, 2010, by Gerald L. Lott and Francisco Armenta—plaintiffs in the action styled as *Gerald L. Lott et al. v. Swift Transportation Company, Inc., et al.*, W.D. Tenn. Case No. 2:09–cv–02287 ("*Lott* Plaintiffs")—as well as by Michael Pascarella—plaintiff in the action styled as *Michael Pascarella v. Swift Transportation Company, Inc.*, W.D. Tenn. Case No. 2:09–cv–02549 ("*Pascarella* Plaintiff"). (D.E.# 98.) Defendant Swift Transportation Company, Inc., ("Swift") filed a response in opposition to both motions on May 9, 2011. On May 23, 2011, the *Ham* and *Broadnax* Plaintiffs filed a reply in support of class certification. The *Lott* and *Pascarella* Plaintiffs filed a separate reply on the same date. The Court heard oral argument on the two motions on May 26, 2011, and took the matter under advisement.

Plaintiffs [1] are graduates of the Swift Driving Academy ("Swift Academy" or "Academy"), a commercial truck driving school formerly operated by Swift. Plaintiffs aver that testing procedures and other practices at the Academy violated state and federal law and that, after regulators discovered these violations, state licensing authorities in Tennessee and elsewhere revoked Plaintiffs' commercial [truck] driver licenses ("CDLs"). The central theory uniting each of the individual plaintiff's claims is the contention that Swift's failure to comply with pertinent regulations resulted in the revocation of Plaintiffs' CDLs and a loss of income when—lacking a valid CDL—Plaintiffs could not work as commercial truck drivers until retested. Through the individual complaints in the four cases consolidated before the Court, Plaintiffs lodge several causes of action against Swift, including breach of contract, unjust enrich-

---

1. The Court will use "Plaintiffs" to denote the plaintiffs in all four actions collectively.

ment, negligence, and violation of the Tennessee Consumer Protection Act ("TCPA").[2]

Plaintiffs seek certification of a plaintiffs class defined as follows:

> All former students of the Swift Academy who, from May 2005 through February 2008, received a Tennessee commercial driver's license ("CDL") while enrolled at Swift and who subsequently were sent notice from the Tennessee Department of Safety or another state motor vehicle bureau that they needed to be re-tested in order to maintain their CDL because the original CDL testing they received through Swift was improper.

The *Ham* and *Broadnax* Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3), which allows certification of a class when "questions of law or fact common to the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In addition to certification under Rule 23(b), the *Lott* and *Pascarella* Plaintiffs also seek certification under Rule 23(b)(1)(A), which allows class certification as necessary to avoid "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A).

In opposition to class certification under Rule 23(b)(3), Swift argues (1) that Plaintiffs' proposed class is overbroad; (2) that Plaintiffs fail to satisfy the prerequisites for class certification set by subsection (a) of Rule 23, including numerosity and typicality; (3) that common issues do not predominate over individual issues such that class treatment is superior to any other method of adjudication; (4) that individual drivers are pursuing their own claims in other cases; and (5) that the proposed class, if certified, would not be manageable. As to Rule 23(b)(1)(A), Swift

contends that certification is improper because the "primary remedy" Plaintiffs seek is monetary—not a declaration as to how Swift should conduct business in the future.

Based on the arguments of the parties, the evidence submitted in support of and opposition to Plaintiffs' motions, the applicable case law and rules, and the entire record in this consolidated action, the Court finds that Plaintiffs have met the requirements for certification of the proposed plaintiffs class under Rule 23(b)(3), as defined above. Specifically, the Court finds that Plaintiffs meet the Rule 23(a) certification perquisites, including numerosity and typicality, that the proposed class definition is no broader than necessary given the common questions for the class, that common questions of law and fact predominate over individual questions, that class certification will not adversely affect similar litigation by members of the proposed class, that the proposed class would be manageable if certified, and that class treatment presents the superior means of adjudicating these claims. The Court finds, however, that the alternative request for certification of a class under Rule 23(b)(1)(A) is both unnecessary in light of class certification under 23(b)(3) and inappropriate in light of Plaintiffs' request for money damages rather than declaratory relief.

Accordingly, the motion of the *Ham* and *Broadnax* Plaintiffs for class certification under Rule 23(b)(3) is **GRANTED.** The motion of the *Lott* and *Pascarella* Plaintiffs for class certification is **DENIED** as to class certification under Rule 23(b)(1)(A) and **GRANTED** as to class certification under Rule 23(b)(3). Because the Court will hold a separate hearing to appoint lead counsel for the certified class, the *Ham* Plaintiffs' Rule 23(g) Motion for Appointment of Watson Burns, PLLC, as Interim Class Counsel filed December 10, 2010, (D.E.# 99), is **STRICKEN AS MOOT.**

---

**2.** Still pending before the Court is Swift's motion to dismiss Plaintiffs' Tennessee Consumer Protection Act claims filed November 17, 2010. Nothing contained in this order shall be construed as a ruling on the merits of that motion. Nevertheless, the Court finds that, assuming Plaintiffs' TCPA claims may proceed, Plaintiffs satisfy the requirements of Rule 23. Plaintiffs' TCPA claims are thereby included within the scope of the class certification granted by this order. The *Pascarella* Plaintiff dismissed his claim under the New Jersey Consumer Fraud Act by a joint stipulation of dismissal filed December 23, 2010.

## I. BACKGROUND[3]

■ Since 2001, Swift—a national trucking company—has operated the Swift Academy in Millington, Tennessee, to recruit and train new truck drivers. Swift recruited students throughout the Eastern and Midwestern United States, and many of its students came from outside Tennessee. For students who lived more than fifty miles from the Academy, Swift paid for bus travel to Millington and housed the students at the Admiralty Inn, a motel near Millington. Swift allegedly directed its students from outside of Tennessee to list the Admiralty Inn as their permanent address on their CDL applications so as to give the false impression that they satisfied the residency requirements for obtaining a Tennessee CDL.

Prior to March 2006, Swift charged its students tuition in the amount of $3,000. Therefore, Swift set tuition at $3,900. Additionally, students paid a $150 "seat reservation fee" or "seating fee." Under the terms of a written "Form Tuition Installment Contract," Students were permitted to repay their tuition after graduation. Specifically, under the agreement, Swift deducted money from the student's paycheck once employed as a driver for Swift. This money was then credited towards the balance owed on the student's loan. A student, however, was obligated to repay the loan balance even if he or she did not obtain post-graduation employment as a driver for Swift.

Training at the Swift Academy lasted twenty-three days. At the end of the course, Swift—acting as a third-party tester for the State of Tennessee—administered the "skills test" required to obtain a commercial driver's license ("CDL") under Tennessee and federal law.[4] Students who passed the skills test received Tennessee CDLs. Some of these students then moved to other states and used their Tennessee CDLs to obtain CDLs in those other states.

In December 2007, the Tennessee Department of Safety ("TDOS") began to suspect irregularities in Swift's testing practices. In February 2008, the U.S. Department of Transportation and the FBI served a search warrant on Swift and raided the Academy. Soon thereafter, TDOS began its own investigation and terminated its third-party testing contract with Swift. The investigations by TDOS and federal authorities allegedly uncovered a systemic pattern of practices that violated state and federal laws governing CDL testing. These alleged practices included such acts as using unapproved courses for the skills test, allowing students to take the skills test over several days, permitting instruction immediately before skills tests, administering tests to groups of students rather than individuals, undermining the integrity of written knowledge tests, and circumventing state and federal residency requirements.

Subsequently, TDOS sent letters to CDL holders who had obtained their licenses through testing by Swift informing them that their CDLs were being suspended and that they would be required to submit to retesting. Swift suspended these drivers' Tennessee CDLs and notified licensing authorities in the other states to which Swift Academy graduates had moved. TDOS revoked all CDLs issued through Swift testing for a defined period without regard to whether

---

3. Because the following facts are undisputed, the Court will dispense with citations to the record. As made clear by the recent decision of the United States Supreme Court in *Wal–Mart Stores, Inc. v. Dukes*, a court considering class certification under Rule 23 must look beyond the pleadings and consider the evidence produced in discovery in assessing whether the requirements of Rule 23 have been met. —— U.S. ——, ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011). There is inherent tension between the Supreme Court's most recent formulation of the inquiry under Rule 23 and Sixth Circuit precedent under which the trial court is instructed to take the movant's allegations of fact as true and resolve any doubts in favor of certification. *See, e.g.,*

*Eddleman v. Jefferson Cnty.,* 96 F.3d 1448 (Table), 1996 WL 495013, at *3 (6th Cir.1996). In the instant case, however, all of the material facts relevant to class certification are undisputed.

4. While Plaintiffs argue that this expense was covered by the $150 "seat reservation fee" paid at the start of the course, Swift contends that the testing fee came from Swift's "general account." This dispute is not material to the instant motion because, even if Swift's assertion is correct, it is a question of fact common to all putative class members and thus would not defeat class certification.

any particular Swift-trained driver had or had not improperly received a CDL. TDOS records indicate that more than 8,700 former Swift students had their CDLs revoked and were required to retest in order to obtain a new CDL.

## II. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class certification. "The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable." *Hansberry v. Lee,* 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *see* Henry L. McClintock, *Handbook on the Principles of Equity* § 11 (2d ed.1948). Thus, a class action under Rule 23 constitutes an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

 As recently explained by the United States Supreme Court, "Rule 23 does not set forth a mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes,* — U.S. —, —, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Although the trial court possesses broad discretion in deciding whether to certify a class, it is the responsibility of the party desiring to have the case proceed as a class action to prove that the requirements of Rule 23 are met. *In re Am. Med. Sys.,* 75 F.3d 1069, 1079 (6th Cir.1996) ("The party seeking the class certification bears the burden of proof."). In considering class certification, the trial court must engage in "rigorous analysis" to ensure satisfaction of Rule 23's requirements. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Am. Med. Sys.,* 75 F.3d at 1079; *Cross v. Nat'l Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying

claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal–Mart,* — U.S. at —, 131 S.Ct. at 2551–52 (internal quotation marks and citations omitted); *see also Rodney v. Northwest Airlines, Inc.,* 146 Fed.Appx. 783, 786–87 (6th Cir.2005) ("[A] court performing a 'predominance' inquiry under Rule 23(b)(3) may consider not only the evidence presented in the plaintiff's case-in-chief but the defendant's likely rebuttal evidence.").

A party seeking class certification must first show that it meets the prerequisites of Rule 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class[,] and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The moving party must then establish that the requirements for one of the three types of class action recognized under Rule 23(b) have been met.

 In the instant case, Plaintiffs primarily seek certification under Rule 23(b)(3).[5] A trial court may certify a(b)(3) class if the requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *see Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 560 (6th Cir.2007). Rule 23(b)(3) goes on to state that

> [t]he matters pertinent to these findings include:

---

5. As noted above, the *Lott* and *Pascarella* Plaintiffs also seek certification under Rule 23(b)(1)(A). For the reasons set out in Part III.C, the Court denies certification under Rule 23(b)(1)(A). The Court will focus its discussion in the other parts of this order on the requirements of Rule 23(b)(3).

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). "[A] court is required to find that common issues predominate in a Rule 23(b)(3) class because '[i]t is only where this predominance exists that economies can be achieved by means of the class-action device.'" *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir.2002) (quoting Fed.R.Civ.P. 23(b)(3) advisory committee's note). "Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones." *Weinberg v. Insituform Techs., Inc.*, No. 93–2742 G/BRO, 1995 WL 368002, at *7 (W.D.Tenn. Apr. 7, 1995) (citations omitted); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D.Mich. 2001) ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.").

## III. DISCUSSION

### A. Rule 23(a) Requirements

#### 1. Numerosity and Impracticality

■ Rule 23(a) first requires that the number of class members be "so numerous that joinder of all members is impracticable[.]" Fed.R.Civ.P. 23(a)(1). Where the number of class members exceeds forty, Rule 23(a)(1) is generally deemed satisfied. *Isabel v. Velsicol Chem. Corp.*, No. 04–2297 DV, 2006 WL 1745053, at *4 (W.D.Tenn. June 20, 2006) (citing *Stewart v. Abraham*, 275 F.3d 220 (3d Cir.2001)). While "sheer number[s]" may alone be sufficient for class certification, *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir.2004) (citation omitted), the considerations relevant to Rule 23(a)(1) may also include factors beyond the number of class members, 1 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:6 (4th ed. Nov.2010) [hereinafter *Newberg on Class Actions*]. "Apart from class size, factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Newberg on Class Actions, supra.* Proof of the precise number of persons to be included in the class is not required. *In re Welding Fume Prods. Liability Litig.*, 245 F.R.D. 279, 297 (N.D.Ohio 2007) (quoting *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D.Mich.1985)).

■ Plaintiffs in the instant case contend that, under their definition, the class would include—at a minimum—several thousand class members. Specifically, the *Ham* and *Broadnax* Plaintiffs estimate that the number of class members is at least 8,700. Swift asserts that Plaintiffs' numbers are based on mere speculation because the proposed class definition is overbroad. More particularly, Swift contends that the number of drivers who ultimately qualify for relief can only be ascertained by examining the individual facts surrounding each driver's testing and his or her subsequent efforts at CDL restoration. The Court disagrees. According to both the pleadings and the proof throughout this litigation, several thousand CDL holders received training and certification through Swift, subsequently had their CDLs revoked because of Swift's alleged failure to follow state and federal laws governing testing, and have been required by state authorities to submit to retesting—this is the alleged harm at issue in this case as to every putative class member. The names of the putative class members allegedly injured by having to retest are readily ascertainable from government records, and these records indicate that thousands of former Swift students suffered revocation of their licenses as

a result of Swift's alleged noncompliance with state and federal laws.[6]

Accordingly, the Court finds that the number of class members in this case is not speculative and the class definition is not overbroad. Taking the number of potential class members into account along with all other relevant considerations—specifically, the likely inability of the plaintiff litigants to maintain individual actions, the need to avoid a multiplicity of actions, and the interests of judicial economy—the Court concludes that the membership of the putative class is so numerous as to make joinder of all members impractical. Therefore, Plaintiffs satisfy the requirements of Rule 23(a)(1).

### 2. Commonality

■■■■■ The Court must next consider whether "there are questions of law or fact common to the class[.]" Fed.R.Civ.P. 23(a)(2). Even one common question will suffice to establish this "commonality" requirement. (*Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir.2003); *see In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir.1996) (citation omitted)). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988). The common question or questions, however, must be meaningful and significant for the litigation. Thus, plaintiffs in a class action must show that "[t]heir claims ... depend upon a common contention ... [and] ... [t]hat common contention, moreover, must be of such a nature that it is

capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." [7] *Wal–Mart*, —— U.S. at ——, 131 S.Ct. at 2551.

■■■■ Even though Plaintiffs allege several alternative theories of recovery, including breach of contract, negligence, and violation of the TCPA, Plaintiffs present common questions equally applicable across the class regarding the elements of each cause of action. These include not just common questions as to the legal duties and obligations imposed on Swift by law, but also whether Swift systematically, either through policy or custom, engaged in actions that later injured Plaintiffs when state authorities revoked CDLs obtained through Swift-administered testing. Accordingly, the Court finds that the commonality requirement of Rule 23(a)(2) is satisfied.[8]

### 3. Typicality

■■■■ Under Rule 23(a)(3), to certify a class, the trial court must also find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This is often referred to as the "typicality" requirement. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed.1992) (footnote omitted)). As with the commonality requirement, the claims and de-

---

6. Even Swift's own Rule 30(b)(6) deponent testified that "a couple thousand" Swift-trained drivers called him because they received letters requiring them to retest.

7. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal–Mart*, —— U.S. at ——, 131 S.Ct. at 2551 (quoting Richard A. Nagareda, *Class*

*Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).

8. Swift does not contest Plaintiffs' ability to meet the requirements of either Rule 23(a)(2) or (4). These concessions, however, are not controlling, as the Court possesses an independent duty to ensure that the standards of Rule 23(a) are satisfied before granting class certification. *See, e.g., Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) ("Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.").

fenses among class members do not have to be identical, provided there exists "a common element of fact or law between the claims." *Cervantes v. Sugar Creek Packing Co., Inc.*, 210 F.R.D. 611, 624 (S.D.Ohio 2002); *see, e.g., Daffin v. Ford Motor Co.*, 458 F.3d 549, 552–53 (6th Cir.2006). On more than one occasion, the United States Supreme Court has recognized that, at least in certain contexts, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, ⸺ U.S. at ⸺ n. 5, 131 S.Ct. at 2551 n. 5 (quoting *Falcon*, 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364).

■ Plaintiffs argue that their claims arise from the same course of conduct that gives rise to the claims of the absent class members. Stated simply, Plaintiffs in each of the cases before the Court allege that Swift owed the same duties to the named plaintiffs as to the absent plaintiffs, that Swift breached those duties by a set of common policies or practices that failed to comply with applicable state and federal laws governing CDL testing, and that all holders of CDL licenses obtained through Swift were consequently required to submit to retesting or lose their CDLs. The *Ham* and *Broadnax* Plaintiffs are particularly specific in detailing how their claims are typical of the claims of the absent class members. According to the *Ham* and *Broadnax* Plaintiffs, both they and the absent class members (i) were recruited to receive CDL training at the Swift Academy; (ii) executed a tuition installment contract whereby the student repaid the tuition to the Academy from his or her wages once in Swift's employ as a truck driver; (iii) stayed at the Admiralty Inn while attending the Swift Academy and were instructed to list it as their "residence" on all license paperwork; (iv) obtained a Tennessee CDL through the Swift Academy; (v) later received notification from TDOS or another state motor vehicle bureau that, because of irregularities in Swift's testing practices,

they would need to submit to retesting or lose their CDLs; and (vi) incurred damages as a result.

Swift argues against a finding of typicality by asserting that each plaintiff would necessarily present a different version of events regarding recruitment for the Swift Academy, the manner in which testing was conducted, and the effects of the subsequent CDL revocation by state authorities. To support its position, Swift cites variations in the deposition testimony given by the named plaintiffs and argues that these differences show that each plaintiff's claim will require fact-specific determination to decide whether the elements of the plaintiffs' causes of action are established. The Court finds Swift's arguments to be without merit.

First, Swift argues that Plaintiffs' contract and quasi-contract claims for testing by Swift can only be adjudicated individually because the tuition installment contract signed Swift Academy students did not provide for CDL testing. Swift contends that any claim for testing can instead only be premised on an oral representation purportedly made to the student by Swift personnel. The inferences to be drawn from Plaintiffs' evidence, however, point to the opposite conclusion. The contract each student signed included a $150 "seat reservation fee" that Swift's own Rule 30(b)(6) representative described as covering "a test sitting fee," among other things.[9] Moreover, the tuition contract signed by Swift Academy students mentions testing by noting that a student who fails the test will be permitted to retest and further contemplates CDL testing by stating that the Swift Academy program will qualify the student to become a Swift driver, which requires a CDL. Because Plaintiffs disclaim any cause of action for breach of an oral contract as to CDL testing, the terms of the written contract will govern all Plaintiffs' breach of contract claims. Thus, Plaintiffs' claims regarding liability for breach of the tuition contract

---

**9.** Specifically, the Rule 30(b)(6) representative stated that the $150 each student paid "include[d] a test sitting fee, drug screening, physical exam, and other paperwork." (Decl. of Robert McCuskey ¶ 5, Ex. G to Pls.' Reply in Supp. of Class Certification, filed 5/23/2011.) Furthermore, Swift's suggestion that the costs of testing

Swift students were not somehow—either directly or indirectly—factored into the costs paid by students as part of their agreement with Swift is sufficiently dubious and lacking in evidentiary foundation as to be unavailing for Swift at this stage of the litigation.

meet the typicality requirement for the absent class members.[10]

Swift similarly avers that Plaintiffs' tort-based claims are individual and fact-specific because they require individualized assessments of fault and causation. The gravamen of Swift's argument is that at least some Swift students were complicit in any illegal testing procedures either because they accepted their CDLs knowing they had not properly passed the CDL test or because they knew they otherwise did not meet the requirements for a CDL (such as the residency requirement). These issues, however, go to the question of damages, not the initial issues of liability—namely, whether Swift's testing procedures ran afoul of state or federal law. The possible existence of fact variations among plaintiffs as to damages thus does nothing to defeat the existence of common questions as to Swift's alleged noncompliance with state and federal laws.

Therefore, the Court finds that there exist numerous questions of a substantial nature common across the putative class. The facts surrounding the claims of the lead plaintiffs in the instant actions are typical of those of the absent class members. Accordingly, Plaintiffs satisfy the typicality requirements of Rule 23(a)(3).

### 4. Adequacy of Representation

■■■■ Finally, Rule 23(a)(4) requires the Court to find that "the representative party will fairly and adequately protect the interests of the class. This requirement is essential to due process as a final judgment is binding on all class members." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 414 (W.D.Tenn.2003) (citation omitted). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative

must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir.1976) (citation omitted). Adequacy of representation mandates that the named plaintiffs not have a conflict of interest in representing the absent class members. *Am. Med. Sys.*, 75 F.3d at 1083.

■■■■ In the instant case, there is no reason to doubt that Plaintiffs will continue to prosecute this case vigorously.[11] The interests of the absent class members are the same as those of the named plaintiffs because all plaintiffs were allegedly injured in the same manner by the same actions of the same defendant. Additionally, there is no suggestion that the named plaintiffs will receive a windfall at the expense of any absent class member. Furthermore, having reviewed the qualifications of the attorneys retained by Plaintiffs in each of the individual cases that have be consolidated into the one action before the Court,[12] the Court finds that counsel possess the experience, training, and other professional qualifications to adequately represent the interests of the absent class members. The requirements of Rule 23(a)(4) regarding adequacy of representation are therefore satisfied.

### B. Rule 23(b)(3): Predominance

The Court must next consider whether Plaintiffs present "questions of law or fact common to class members [that] predominate over any questions affecting only individual members ... [such] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). As discussed above, all of the plaintiffs proceed from the

---

10. The ultimate interpretation of the written tuition contract's terms and whether Swift breached those terms through its policies or practices are merits questions that need not and cannot be resolved in the context of the instant class certification motions.

11. As noted above, Swift does not challenge Plaintiffs' ability to satisfy the requirements of Rule 23(a)(4).

12. Counsel's qualifications are contained in the record as exhibits to the two motions for class certification. The Court incorporates herein by reference the relevant information contained in the record regarding proposed class counsel's qualifications and finds them to be sufficient. The Court will not designate lead counsel in the instant order, but will instead set a hearing on this issue by separate notice.

common allegation that Swift's administration of testing did not comply with state and federal law and that knowledge of these irregularities eventually led state licensing agencies to revoke the CDLs of all students who had received their licenses through Swift-administered CDL testing. The parties do not dispute that this is a threshold question for any of the plaintiffs to establish liability. Nonetheless, Swift argues that the common issues presented by this question do not predominate over the individual issues. The Court disagrees.

### 1. Breach of Contract and Unjust Enrichment Claims

■ Swift first contends that Plaintiffs' breach of contract claims must be determined individually because the form tuition contract each plaintiff signed is silent on the issue of testing, meaning that any contractual or quasi-contractual relief based on faulty CDL testing must be based on an oral contract or representation. As previously explained in discussing typicality, however, Plaintiffs aver that the tuition contract contemplates student payment for CDL testing, and they therefore base their contract claim on the written document itself, not an oral contract. Thus, there are no individual liability issues regarding Plaintiffs' breach of contract claims that would prevent predominance by the questions common to all class members on this claim.

■ Swift also argues that Plaintiffs' unjust enrichment claim is inappropriate for class treatment because it would require consideration of individual facts and a balancing of the equities. Plaintiffs respond by emphasizing that unjust enrichment is an alternative theory in the event they are unable to obtain recovery for breach of the tuition contract. Moreover, Plaintiffs explain that their unjust enrichment claim is based on the theo-

ry that, even if Swift breached no express contractual term, Swift students nonetheless conferred a monetary benefit on Swift in conjunction with the training program, and a portion of the consideration provided by the students was applied to CDL testing. The Court agrees with Plaintiffs that this theory is equally applicable and common to all members and that it would not require consideration of individualized facts to such an extent as to militate against classwide adjudication of the claim. Additionally, as Plaintiffs note, courts allow class certification of unjust enrichment[13] claims where the basis of the claim is the same for all class members. See, e.g., Cnty. of Monroe v. Priceline.com, Inc., 265 F.R.D. 659, 671 (S.D.Fla.2010). Whether Swift accepted money for CDL testing and possessed a pattern or practice of conducting that testing in such a flawed manner as to justify returning any money received for this purpose is a common issue that predominates across the class.

### 2. Negligence Claims

■ Swift also argues that Plaintiffs' negligence claims are inappropriate for class certification because of various individual issues. Specifically, Swift argues that each plaintiff's damages will vary depending on whether he or she ever took and passed the retest. Swift further asserts that classwide adjudication would prevent it from litigating its affirmative defenses of in pari delicto[14] and comparative fault—both of which are premised on the allegation that at least some of the students participated in or contributed to the wrongful conduct that prompted the revocation of CDLs. Each of Swift's arguments, however, concerns the calculation of damages for the individual plaintiffs rather than the overarching questions regarding Swift's testing procedures. The fact that not

---

13. "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable [] to retain the benefit without payment of the value thereof.'" *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn.2005) (quoting *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966)).

14. Based on the Latin phrase for "in equal fault," the *in pari delicto* doctrine provides that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Black's Law Dictionary* (9th ed.2009).

every plaintiff was necessarily injured to the same extent does not mean that common questions do not predominate. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988) ("The single major issue distinguishing the class members is the nature and amount of damages, if any, that each sustained. To this extent, a class action in the instant case avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts."). To the contrary, the Court finds that the questions on liability predominate over these individual considerations and make classwide adjudication appropriate.[15]

### 3. The Superiority of Classwide Adjudication

Finally, Rule 23(b)(3) requires the Court to ask whether Plaintiffs have established that adjudication on a classwide basis is superior to any other method. "This second requirement of Rule 23(b)(3) compels the court to balance the merits of a class action in terms of fairness and efficiency." *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 216 (S.D.Ohio 2003); *see, e.g., Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 680–81 (N.D.Ohio 1995). The four, non-exhaustive factors for the Court to consider in this inquiry are as follows: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3)(A)–(D).

First, as to the interests of the class members in maintaining individual actions, the Court finds that the benefits of a class action outweigh the interest in individual litigation.

Given the numerous common issues, duplication of this litigation in possibly thousands of cases would constitute an uneconomical use of judicial resources as well as an inefficient use of the resources of the parties. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617–19, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Kurczi*, 160 F.R.D. at 681. Additionally, the value of each individual plaintiff's claim does not necessarily appear to be such that the individual cases could be litigated outside of a class action. The Court also agrees with those courts that have held that, in cases simply seeking economic damages rather than redress of physical injuries, class members have a diminished interest in individual litigation for the simple reason that the class members can always opt out of the class and pursue their own suits if they feel they can obtain greater damages on their own. *In re Community Bank of N. Virginia*, 418 F.3d 277, 309 (3d Cir.2005).

As to the existence of other related litigation, the record reflects that at most there are three lawsuits filed by individual plaintiffs who would be members of the plaintiffs class.[16] Because the membership of the putative plaintiffs class numbers in the thousands, the existence of suits by three individual class members indicates that certification would not disturb the progress of other litigation. Class certification would instead likely enable adjudication of claims by plaintiffs who would otherwise not receive their day in court. The Court also finds that it is desirable to concentrate the litigation of these claims in the Western District of Tennessee since Swift is located in this jurisdiction and the Swift Academy was located in this district.

Finally, the Court must consider the manageability of this litigation if allowed to proceed as a class action. "[T]his consideration encompasses the whole range of practical problems that may render the class action

---

**15.** The Court has considered and finds to be without merit the remaining arguments advanced by Swift both in its written submissions and at oral argument as to why common issues do not predominate. Among these other reasons is that the *Lott* and *Pascarella* Plaintiffs have failed to attend depositions noticed by Swift. The Court finds that this alleged failure does not

undermine the ability of the *Lott* and *Pascarella* Plaintiffs to serve as class representatives. Swift may raise this alleged failure to cooperate in discovery by means of a motion to compel.

**16.** These individuals may, of course, opt out of the certified class to pursue their own litigation.

format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Although Swift argues that the litigation would become unmanageable if certified, its arguments are essentially another way of contending that individualized issues predominate over common ones—a contention the Court has already considered and rejected. The Court finds nothing about this litigation that would make it any more challenging to manage than the traditional class action. Rather, adjudication on a classwide basis would reduce the number of individual suits and allow quicker and more efficient resolution of the issues. Accordingly, the Court finds that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ.P. 23(b)(3). All the requirements of Rule 23(a) and (b)(3) having been satisfied, the Court **GRANTS** Plaintiffs' motions for class certification as described more fully below.

## C. Alternative Certification under Rule 23(b)(1)(A)

■ The *Lott* and *Pascarella* Plaintiffs alternatively seek certification of a class under Rule 23(b)(1)(A), which allows a court to certify a class when "prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Fed.R.Civ.P. 23(b)(1)(A). The Court finds that certification of a class under Rule 23(b)(1)(A) is inappropriate. First, the Court has now certified the same class of plaintiffs under Rule 23(b)(3), rendering certification under (b)(1)(A) unnecessary.

Second, Swift no longer operates the Swift Academy and is no longer involved in administering CDL tests. Thus, whether its actions violated state or federal law would have no prospective relevance for the parties and is instead pertinent only to the question of Swift's liability to the Swift Academy students allegedly injured. Whether Swift is legally obligated to compensate any injured

parties, however, is a mere claim for money damages, not a determination of a "standard of conduct" within the ambit of Rule 23(b)(1)(A). *See Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 93–94 (D.Conn.2004). Rule 23(b)(1)(A) "is meant to protect the defendant from having to comply with inconsistent court orders." *Taber v. McCracken Cnty.*, No. 5:06–CV–144–R, 2008 WL 5101684, at *2 (W.D.Ky. Nov. 26, 2008) (citing *McBirney v. Autrey*, 106 F.R.D. 240, 245 (N.D.Tex.1985) ("Rule 23(b)(1)(A) is satisfied only in the event that inconsistent judgments in separate suits would trap the party opposing the class 'in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another.'") (citation omitted)). "The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir.1984). Therefore, the request of the *Lott* and *Pascarella* Plaintiffs for certification of a class under Rule 23(b)(1)(A) is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the motion of the *Ham* and *Broadnax* Plaintiffs for certification of a class under Rule 23(b)(3) is **GRANTED**. The motion of the *Lott* and *Pascarella* Plaintiffs for class certification is **DENIED** as to certification of a class under Rule 23(b)(1)(A), but **GRANTED** as to certification of a class under Rule 23(b)(3). Additionally, the *Ham* Plaintiffs' Rule 23(g) Motion for Appointment of Watson Burns, PLLC, as Interim Class Counsel filed December 10, 2010, is **STRICKEN AS MOOT**.

Pursuant to Rule 23(c)(1), the Court hereby certifies a plaintiffs class in this action on the common issues, claims, and defenses described above for the following class:

All former students of the Swift Academy who, from May 2005 through February 2008, received a Tennessee commercial driver's license ("CDL") while enrolled at Swift and who subsequently were sent notice from the Tennessee Department of Safety or another state motor vehicle bureau that they needed to be re-tested in

order to maintain their CDL because the original CDL testing they received through Swift was improper.

By separate notice, the Clerk shall set a hearing to determine the designation of lead counsel, in accordance with Rule 23(g), and the manner in which the other attorneys currently appearing for Plaintiffs in this action shall participate. After resolution of this issue, lead counsel shall submit to the Court a proposal for providing notice to class members sufficient to satisfy the requirements of Rule 23(c)(2)(B).